## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Greg Matus, *on behalf of himself and all others similarly situated*, | : |
| | : |
| | : |
| Plaintiff, | : |
| vs. | : |
| | : |
| Sport Squad, Inc. d/b/a Joola, | : |
| | : |
| Defendant. | : |

Case No.

## CLASS ACTION COMPLAINT

Plaintiff Gregory Matus, through counsel, brings this action in his individual capacity and on behalf of the class of persons similarly situated as defined below and alleges, pursuant to his own knowledge, or where there is no personal knowledge, upon the investigation of counsel and/or upon information and belief, as follows:

## INTRODUCTION

1.     This action seeks to recover damages incurred as the result of a deceptive and fraudulent scheme conduct by Defendant Sport Squad, Inc. d/b/a JOOLA ("JOOLA") wherein JOOLA developed, marketed, and sold pickleball paddles with the express warranty that the paddles were approved by USA Pickleball ("USAP"), the National Governing Body for the sport of pickleball in the United States and provides players with official rules, tournaments, rankings, and promotional materials.

2.     The paddles at issue include the: Tyson McGuffin Magnus 3 14mm, Tyson McGuffin Magnus 3 16mm, Collin Johns Scorpeus 3 16mm, Anna Bright Scorpeus 3 14mm, Simone Jardim Hyperion 3 16mm, Ben Johns Hyperion 3 16mm, Ben Johns Hyperion 3 14mm, Ben Johns Perseus 3 14mm, Ben Johns Perseus 3 16mm, Perseus Alpha 2024 16mm, Perseus Alpha 2024 14mm, Magnus Alpha 2024 16mm, Magnus Alpha 2024 14mm, Hyperion Alpha 2024

1

16mm, Hyperion Alpha 2024 14mm, Scorpeus Alpha 2024 16mm, and the Scorpeus Alpha 2024

14mm ("Subject Paddles").



3.      Since obtaining USAP Approval in November 2023, Defendant, JOOLA, has sold

the Subject Paddles to tens of thousands of consumers for $279.95 per paddle.

4.      On May 14 and 15, Joola informed USA Pickleball that Joola submitted the wrong

paddles for certification in November 2023.

5.      On May 16, 2024, USAP removed the Subject Paddles from the approval list.

Shortly thereafter, JOOLA issued a statement indicating that the Subject Paddles had been

removed due to an "administrative error" made by JOOLA during the testing process in 2023.

6.      As a result, despite Defendant's representations to the contrary, the paddles are not

permitted to be used in sanctioned or non-sanctioned, professional or amateur USA Pickleball

sanctioned tournaments throughout the United States.

7.     Even though the paddles are no longer approved by USAP, Defendant JOOLA continues to sell and deliver the paddles with the "USA Pickleball Approved" designation imprinted on each paddle.



8.     Defendant's systematic business practice of advertising and selling "USA Approved" paddles has resulted in Plaintiff and Class Members lacking information and receiving misleading information about the true condition, permitted use, approvals, and value of the paddles, which was likely to mislead and did mislead reasonable consumers, including Plaintiff and Class Members.

9.     Plaintiff, on his own behalf and on behalf of those similarly situated, seeks to enjoin the practices complained of herein and asks that the Court order the Defendant JOOLA to refund to all Class members, including Plaintiff, money paid in connection with the purchase of each subject paddle.

10.     In a quintessential bait and switch scheme designed to make money by unfairly monopolizing the pickleball market, JOOLA submitted paddles that they knew would be approved while simultaneously manufacturing the Subject Paddles.

## **JURISDICTION**

11.     The federal jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2)(A) as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, the number of class members exceed 5,000, and at least one class member is a citizen of a state different than the Defendant.

12.     Personal jurisdiction over Defendant is proper because Defendant regularly conducts business in Florida, sold the subject paddles in Florida to Plaintiff and other Class Members, and engaged in tortious conduct in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendant is permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because numerous of Class Members reside in this District; Defendant engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because Defendant entered into transactions and/or received substantial profits from Class Members who reside in this District.

## PARTIES

14.     Plaintiff, Greg Matus ("Plaintiff"), is an individual over the age of 18 years old residing in Fort Lauderdale, Florida. Plaintiff competed in the Minto US Open Pickleball Championships in Naples, Florida in April 2024. On April 17, 2024, Plaintiff purchased two of the Subject Paddles for $296.75 each. Plaintiff then returned home and began training with the Subject Paddles in preparation for his next USAP sanctioned event.

15.     Defendant, JOOLA, is a Delaware corporation with its principal place of business located at 15800 Crabbs Branch Way, Suite 250, Rockville, Maryland 20855.  Defendant is a leader in the design, development, manufacture, and distribution of pickleball paddles and accessories under its recognized brand name JOOLA.

## FACTUAL ALLEGATIONS

16.     The sport of Pickleball has become overwhelmingly popular with a 52% increase in participants from 2022 to 2023. Over the last three years, there has been an average increase of 223.5% in pickleball participation, making it the fastest-growing sport in America.

17.     USAP has been the National Governing Body for the sport of pickleball in the United States since 1984 with a mission of promoting the development and growth of pickleball in the United States and its territories. The nonprofit organization is responsible for developing and implementing the official rules of pickleball.

18.     In furtherance of its mission, USAP established the Equipment Evaluation Committee ("EEC") to develop pickleball equipment testing standards. The EEC works directly with NTS Technical Systems—the undisputed leader in equipment testing, inspection, and certification—to ensure that all USA Pickleball approved equipment meets rigorous standards to ensure a level playing field for players and manufacturers.

19.     As is customary in the industry, JOOLA submitted each of the Subject Paddles to USAP for approval in late 2023 after which time, the Subject Paddles were approved for use in USAP sanctioned events.

20.     On May 16, 2024, after six months of permitted, sanctioned play with the Subject Paddles, USAP released the following statement:[1]

> To our valued USA Pickleball community --
>
> As pickleball's governing body in the United States, USA Pickleball takes its certifications, rules and regulations seriously to ensure integrity and fairness for all players.
>
> On May 14 and 15, JOOLA informed USA Pickleball that JOOLA submitted the wrong paddles for certification in November 2023. As a result, USA Pickleball

---

[1] https://usapickleball.org/news/usa-pickleball-statement-on-decertified-JOOLA-paddles-and-equipment-testing-standards/

promptly de-listed the affected paddles from its Approved Paddle list. Paddles that do not appear on USA Pickleball's Approved Paddle list are not certified for use in USA Pickleball-sanctioned tournaments.

Since de-listing, JOOLA has informed USA Pickleball that it intends to submit additional paddles to USA Pickleball for certification. USA Pickleball utilizes a third-party testing facility that holds approved equipment to an extremely rigorous process and the highest testing standards and will evaluate those submissions for compliance with USA Pickleball's equipment standards.

USA Pickleball will continue to evaluate paddles in the market in order to ensure our existing set of standards are being met. For a full list of approved paddles, visit *www.equipment.usapickleball.org*.

21.    News of the de-certification of the Subject Paddles sent shockwaves through the pickleball community, causing panic for players registered to compete as both amateurs and professionals in USAP sanctioned events.

22.    On May 16, 2024, JOOLA issued the following statement in response to USAP's decertification of the Subject Paddles:[2]

On May 15, 2024, JOOLA was informed by USA Pickleball (USAP) of their decision to remove the Gen3 paddles from the Approved Paddle list.  After a review of USAP's preliminary findings last week, we believe USAP's decision to remove the Gen3 paddles from the approved list was based on an administrative error by JOOLA in November 2023 as part of USAP's similarity testing protocols. JOOLA was only able to confirm the precise issue last week and responded immediately to quickly resolve the matter.

The JOOLA Gen3 paddles on the market are materially the same as the models approved by USAP in the September 2023 paddle submission process and we are confident that they are fully compliant with USAP's standards.

Since entering the pickleball community in 2022, JOOLA has consistently and successfully worked within the USAP standards and process to approve over 40 paddles currently being used around the world.

USAP has not provided a timeline of when the process will be completed, however we are committed to working with USAP to resolve this matter as quickly as possible. We will continue to inform you as new information becomes available and regret any inconvenience.

---

[2] https://JOOLAusa.com/official-JOOLA-statement-as-of-may-16-2024/

23.     On May 24, 2024, JOOLA issued an Official Update stating:

We want to keep our customers and partners updated on the progress with USA
Pickleball (USAP) regarding our Gen3 paddles being reinstated to the Approved
Paddles list. Our goal is to minimize disruption and reach a resolution on the issue
for our customers, partners, and the pickleball community.

Immediately upon being informed of USAP's decision to remove its Gen3 paddles
from the Approved Paddles list on May 15, 2024, we have worked quickly and
meticulously to follow the guidelines as presented by USAP to recertify our Gen3
paddles. We want to acknowledge that the de-listing was due to an incorrect
submission by JOOLA as part of the similarity testing protocols. We emphasize our
confidence that the Gen3 paddles are compliant with USAP standards.

On May 17, 2024, we re-filed our Gen3 paddles for expedited testing and confirmed
all relevant paperwork and paddles were received by USAP. Despite processing our
expedited testing fee payment last week, we received a communication from USAP
earlier today (May 24, 2024), informing us they were unable to expedite testing and
are not able, at this point, to provide confirmation regarding the timeline of when
the testing process will be completed.

JOOLA firmly maintains that the Gen3 paddles on the market are materially the
same as models approved by USAP in September 2023 and looks forward to a
resolution on the issue from USAP. We will continue to keep you informed and
sincerely apologize for the inconvenience and confusion this has presented.

24.     Immediately following the news of decertification, USAP sanctioned tournaments
began informing their professional and amateur competitors that they would not be permitted to
compete in the tournament using a Subject Paddle.

25.     By way of example, following the USAP statement, South Florida's Paddle Tap
Pickleball issued a statement that they were "reaffirming [their] dedication to upholding the highest
standards of fair play and competition by continuing to adhere strictly to USA Pickleball guidelines
regarding approved paddles. Effective immediately, any paddles not listed on the official USA
Pickleball approved paddle list will be banned from all Paddle Tap Pickleball tournaments and
events."

26.     It is no coincidence that the very same day as the May 16, 2024 announcement de-certifying the Subject Paddles, the United Pickleball Association ("UPA")—the parent company of the Carvana PPA Tour ("PPA") and Major League Pickleball ("MLP") by Margaritaville—issued a press release announcing the formation of the United Pickleball Association of America ("UPA-A") as the new "global pickleball governing body."[3]

27.     The UPA-A was created to replace USAP as the governing body for safety standards in pickleball as "it will oversee and implement equipment standards, rules and regulations" for the PPA Tour and Major League Pickleball. Rather than comply with safety standards set by USAP's independent consultant, NTS (the leading independent expert in testing and certification), "the new organization promises to create two **manufacturer** and player-led committees to provide actionable feedback on paddle regulations," thus making safety manufacturer (and profit) driven rather than independently regulated.  It should come as no surprise that Defendant JOOLA is a listed member of the inaugural Equipment Manufacturer Advisory Board of the UPA-A.

28.     Because USAP officially remains the governing body of pickleball in the United States, despite the formation and self-announcement of UPA-A as the purported new governing *global* body of pickleball, the PPA itself issued a statement to participants registered to play in the May 29-June 2 PPA CIBC Texas Open, indicating that the Subject Paddles are not approved for play due to a discrepancy with USAP.

29.     As time passes, tournaments continue to ban the use of the Subject Paddles, and Defendant JOOLA continues to sell the Subject Paddles with the USAP Approved branding, the damages of Plaintiff and Class Members continue to amass.

---

[3] https://unitedpickleball.com/upa-a-announced-as-global-pickleball-governing-body/

30.     Notwithstanding, on May 24, 2024, USAP informed JOOLA that they "were unable to expedite testing and are not able, at this point, to provide confirmation regarding the timeline of when the testing process will be completed;" thus perpetuating this problem indefinitely while Defendant continues to knowingly misrepresent the characteristics, approvals, and uses of its Paddles.

31.     On June 5, 2024, USA Pickleball issued an Updated Statement on the Subject Paddles stating,

> USA Pickleball recently de-listed certain paddles after JOOLA notified USA Pickleball that it had previously submitted the wrong paddles for certification (see USA Pickleball statement posted on May 16). JOOLA also informed USA Pickleball that it intended to submit additional paddles for certification.
>
> USA Pickleball received and tested the newly submitted paddles, which did not meet our approved equipment standards. As a result, these paddles have not been added to the USA Pickleball approved equipment list.
>
> As pickleball's governing body in the United States, USA Pickleball takes its certifications, rules and regulations seriously to ensure integrity and fairness for all players.
>
> USA Pickleball utilizes a third-party testing facility that holds approved equipment to an extremely rigorous process and the highest testing standards and will evaluate those submissions for compliance with USA Pickleball's equipment standards. For a full list of affected and approved paddles, visit www.equipment.usapickleball.org.[4]

32.     USAP further explained, "JOOLA only recently notified USA Pickleball that the paddles on the market are not the same paddle certified by USA Pickleball.  As JOOLA explained, JOOLA submitted the wrong samples to USA Pickleball under an Application for Certification by Similarity process.  That process involves, among other things, signed attestations by the

---

[4] https://usapickleball.org/news/usa-pickleball-statement-on-decertified-joola-paddles-and-equipment-testing-standards/.

manufacturer that the samples are structurally and functionally identical to a previously approved paddle and comply with other equipment standards.

33.    In addition to being officially banned for tournament play, it is widely known that recreational play also adheres to allowing only approved paddles in sanctioned and unsanctioned play, thereby presently rendering the JOOLA Subject Paddles completely worthless for any purpose.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

35.    The classes' claims all derive directly from the conduct of Defendant, JOOLA. Defendant has engaged in uniform and standardized conduct toward the classes. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions, among individual class members. Within each claim for relief asserted by the respective classes, the same legal standards govern.  Additionally, many states, and for some claims all states, share the same legal standards and elements of proof, facilitating the certification of multistate classes for some or all claims. Accordingly, Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

I.    **Class Definitions**

### THE NATIONWIDE CLASS

36.    Plaintiff brings this action and seek to certify and maintain it as a class action under

Rules 23(a); (b)(2); and/or (b)(3); and/or (c)(4) of the Federal Rules of Civil Procedure on behalf of himself and a Nationwide Class defined as follows:

> All persons in the United States who purchased a Subject Paddle between November 2023 and the Present.

<u>THE STATEWIDE/MUTLI-STATE SUBCLASSES</u>

37.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(2); and/or (b)(3); and/or (c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and statewide and multi-state subclasses (hereafter, the "Subclass") defined as:

> All persons in the states set forth in Table A below who purchased a Subject Paddle between November 2023 and the Present.

**Table A**

| | |
|---|---|
| Colorado | New Jersey |
| Connecticut | New Mexico |
| Florida | New York |
| Hawaii | Ohio |
| Idaho | Tennessee |
| Illinois | Vermont |
| Michigan | Washington |
| New Hampshire | Maryland |

38.     The Nationwide Class and State/Multi-State Subclasses and their members are sometimes referred to herein as the "class" or "classes."

39.     Plaintiffs reserve the right to revise the definition of the classes based upon subsequently discovered information and reserve the right to establish sub-classes where appropriate.

40.     Excluded from any class are Defendant, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates; class counsel and their employees; and judicial officers and their immediate family members and associated court staff assigned to this case.

## II.     Rule 23 Allegations

<u>Numerosity and Ascertainability</u>

41.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).  There are tens of thousands of Subject Paddles that have been sold nationwide. Individual joinder of all class members is impracticable.

42.     Each of the classes is ascertainable because its members can be readily identified using records kept by JOOLA or third parties in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to each certified class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

<u>Predominance of Common Issues</u>

43.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective classes predominate over questions affecting only individual class members. These include, without limitation, the following:

a)   Whether JOOLA knew or should have known about their "administrative error" that led to the original certification of the incorrect Subject Paddles.

b)   Whether representations by JOOLA concerning the approval of the Subject Paddles by USAP constitutes a material fact that reasonable purchasers would have considered in deciding whether to purchase a Subject Paddle;

c)   Whether Defendant JOOLA omitted and failed to disclose material facts about the Subject Paddles sold to class Members;

d)   Whether Defendant JOOLA engaged in unfair, deceptive, unlawful and/or

fraudulent acts or practices in trade or commerce;

e)   Whether Defendant JOOLA's unlawful, unfair, and/or deceptive practices harmed Plaintiff and the Classes; and if so, what remedies are available under those statutes;

f)   Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

g)   Whether Defendant's statements, concealments and omissions regarding the Subject Paddles were material, in that a reasonable consumer could consider them important in making purchasing decisions;

h)   Whether Defendant has been unjustly enriched by their conduct;

i)   Whether the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction; and

j)   What aggregate amounts of statutory penalties are sufficient to punish and deter Defendant and to vindicate statutory and public policy.

<u>Typicality</u>

44.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the class members and arise from the same course of conduct by JOOLA.  The relief Plaintiff seeks is typical of the relief sought for the absent class members.

<u>Adequate Representation</u>

45.   Plaintiff will fairly and adequately represent and protect the interests of the classes. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions and financial misconduct.

<u>Superiority</u>

46.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant

UWM has acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each class as a whole.

47.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.   The common questions of law and of fact regarding JOOLA's conduct and responsibility predominate over any questions affecting only individual class members.

48.     Because the damages suffered by each individual class member may be relatively small compared to the cost of prosecuting his or her individual claims, the expense and burden of individual litigation would make it very difficult or impossible for individual class members to redress the wrongs done to each of them individually, such that most or all class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

49.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation.   Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

50.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide, and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any class into subclasses.

<div align="center">

**CLAIMS FOR RELIEF**
**COUNT I**
**FRAUD**

</div>

51.     Plaintiff incorporates by reference paragraphs 1-50 of this Complaint as though fully stated herein.

52.     Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law of fraud, as there are no true conflicts (case-dispositive differences) among various states' laws.

53.     In the alternative, Plaintiff brings this claim under the respective laws of Florida on behalf of a subclass comprised of: (a) all class members who purchased a Subject Paddle from JOOLA in Florida, and (b) all class members who purchased a Subject Paddle in states with substantially similar common law of fraud.

***False Statement of Fact***

54.     JOOLA defrauded consumers by placing into a stream of commerce the Subject Paddles.

***Plaintiff and Class Members Relied on the False Representation***

55.    Plaintiff and Class Members did not know that JOOLA submitted the wrong paddles for testing or that the Subject Paddles would ultimately be de-certified by USAP before they purchased the Subject Paddles and consequently Plaintiff and Class Members relied on JOOLA to properly submit and receive certification of the Subject Paddles.

56.    Plaintiff and Class Members purchased the Subject Paddles in reliance on the representations made by JOOLA that the paddles were USAP Approved.

57.    When Plaintiff purchased the Subject Paddles, he relied upon the USAP Approval as evidence that the Subject Paddles could be used in USAP sanctioned events.

***Plaintiff and Class Members Suffered Damage***

58.    By placing into a stream of commerce the Subject Paddles without obtaining proper USAP Approval and by fraudulently misrepresenting and omitting material facts with intent to deceive—as evidenced by, among other things, Defendant's continued marketing and promotion of the products have having qualities that they do not have—Plaintiff and Class Members are trapped with a de-certified, non-approved paddle that cannot be used in sanctioned events or on local courts thereby creating a financial loss.

59.    Defendant's improper branding of the Subject Paddles with USAP Approved caused Plaintiff and Class Members to pay a premium for the Subject Paddles that they otherwise would not have paid.

60.    Plaintiff and Class Members have suffered actual damage as a result of the Defendant's willfully deceptive acts and practices.

WHEREFORE, Plaintiff and each Class member is entitled to recovery of all sums paid for the Subject Paddles, all damages allowable by law, punitive damages, and reasonable attorneys' fees.

**COUNT II**
**UNJUST ENRICHMENT**

61.     Plaintiff incorporates by reference paragraphs 1-50 of this Complaint as though fully stated herein.

62.     Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment.

63.     In the alternative, Plaintiff brings this claim under the respective laws of Florida on behalf of a subclass comprised of: (a) all class members who purchased a Subject Paddle from JOOLA in Florida, and (b) all class members who purchased a Subject Paddle in states with substantially similar common law of unjust enrichment.

64.     Plaintiff and the class have conferred direct benefits on Defendant JOOLA in the form of payments for the Subject Paddles and the value of increased market share, and Defendant has knowledge of those benefits vis-à-vis the millions of dollars reaped through sales of the Subject Paddles.

65.     Such conferred benefit allowed Defendant to enrich itself to the detriment of the Class.

66.     Defendant appreciated, accepted, and retained this benefit, as it earned a profit by virtue of its deceptive business practice.

67.     The financial benefits derived by Defendant rightfully belong to Plaintiff and the class.

68.     It would be inequitable for Defendant to retain the payments.

69.     Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the class all inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant.

70.     Plaintiff and Class Members have suffered damages as a result of Defendant's unjust enrichment.

WHEREFORE, Plaintiff and each Class Member is entitled to recovery of all sums paid to purchase a Subject Paddle, all damages allowable by law, punitive damages, and reasonable attorneys' fees.

<div align="center">

**COUNT III**
**BREACH OF EXPRESS WARRANTY**

</div>

71.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-50 above as if fully set forth herein.

72.     Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law breach of express warranty, as there are no true conflicts (case-dispositive differences) among various states' laws of breach of express warranty.

73.     In the alternative, Plaintiff brings this claim under the respective laws of Florida on behalf of a subclass comprised of: (a) all class members who purchased a Subject Paddle from JOOLA in Florida, and (b) all class members who purchased a Subject Paddle in states with substantially similar law regarding breach of express warranty as Florida.

74.     JOOLA was at all relevant times a merchant and a seller of the Subject Paddles. When third-party online retailers sell JOOLA's Subject Paddles, they advertise and sell them using the information provided directly from JOOLA, including that the Subject Paddles are USAP Approved, which is stated by JOOLA on the paddle itself.

75.     Reasonable consumers, including Plaintiff and the Class, who purchased professional level paddles at the price point of JOOLA's Subject Paddles relied on the express representation by JOOLA that the Subject Paddles were USAP Approved.

76.     JOOLA knew the market value of the Subject Paddles inherently depended on the representation and warranty regarding their USAP Approval and knew that such approval was a substantial part of what consumers were paying for in purchasing the products, including the assurance that the Paddles could be used in competition.  Had consumers, including the Plaintiff, known that the Subject Paddles would be de-certified or not approved by USAP, consumers would not have purchased the Subject Paddles, a fact well-known to Defendant.

77.     The Subject Paddles are goods, and Plaintiff and the Class members purchased the JOOLA paddles in a consumer transaction.

78.     JOOLA expressly warranted to all purchasers that the Subject Paddles were USAP Approved by directly placing the stamp of approval on each Subject Paddle.

79.     Plaintiff and Class Members and the Subclass, prior to making their purchases, relied on this express warranty that the Subject Paddles were, and would remain, USAP Approved, and this formed a part of the basis of the bargain, as described above.

80.     Because JOOLA stated the USAP Approval directly on the Subject Paddles, and provided information about the Approval to third-party online retailers who provided it on their websites, JOOLA communicated directly to purchasers, including Plaintiff and the Class and Subclass, prior to their purchases.

81.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class and Subclass suffered injury and damages in an amount to be determined at trial.

WHEREFORE, Plaintiff and each Class Member is entitled to recovery of all sums paid to purchase a Subject Paddle, all damages allowable by law, punitive damages, and reasonable attorneys' fees.

### COUNT IV
### BREACH OF IMPLIED WARRANTY

82.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-50 above as if fully set forth herein.

83.     Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law breach of express warranty, as there are no true conflicts (case-dispositive differences) among various states' laws of breach of implied warranty.  In the alternative, Plaintiff brings this claim under the respective laws of Florida on behalf of a subclass comprised of: (a) all class members who purchased a Subject Paddle from JOOLA in Florida, and (b) all class members who purchased a Subject Paddle in states with substantially similar law regarding breach of implied warranty as Florida.

84.     JOOLA was at all relevant times a merchant and a seller of the Subject Paddles. When third-party online retailers sell JOOLA's Subject Paddles, they advertise and sell them using the information provided directly from JOOLA, including that the Subject Paddles are USAP Approved, which is stated by JOOLA on the paddle itself.

85.     Plaintiff relied on the representation by JOOLA that the Subject Paddles were USAP Approved. Had Plaintiff known that the Subject Paddles would be de-certified by USAP, he would not have purchased the Subject Paddles.

86.     JOOLA knew the market value of the Subject Paddles inherently depended on the representation and warranty regarding their USAP Approval and knew that such approval was a substantial part of what consumers were paying for in purchasing the products, including the

assurance that the Paddles could be used in competition.  Had consumers, including the Plaintiff, known that the Subject Paddles would be de-certified or not approved by USAP, consumers would not have purchased the Subject Paddles, a fact well-known to Defendant.

87.     The Subject Paddles are goods and Plaintiff and the Class and Subclass members purchased the Subject Paddles in a consumer transaction.

88.     The implied warranty of merchantability requires that goods be fit for the ordinary purposes for which goods of that type are used; have adequate labeling; and conform to any promises or affirmations made on any product label.

89.     JOOLA breached its implied warranties to Plaintiff and the Class and Subclass because the Subject Paddles state that they are USAP Approved directly on the Subject Paddles, on JOOLA's website, or on third-party online retailers' websites based on the information provided to such retailers by JOOLA and, as such, were not fit for their ordinary purpose, did not have adequate labeling, and did not conform to the promises or affirmations made. As alleged above, whether the Subject Paddle is USAP Approved is significant to purchasers of pickleball paddles.

90.     Defendant's implied warranties extend to Plaintiff and the Class and Subclass because Defendant knew the purposes for which Plaintiff and the Class and Subclass were purchasing the Subject Paddles and Defendant manufactured the Subject Paddles for use in USAP sanctioned events.

91.     Defendant knew that Plaintiff and the Class and Subclass were making such purchases based upon, among other things, approval by USAP.

92.     Because JOOLA stated the USAP Approval directly on the Subject Paddles or on its own website, or provided information about the USAP Approval to third-party online retailers

who provided it on their websites, JOOLA communicated directly to purchasers, including Plaintiff and Class Members and the Subclass, prior to their purchases.

93.     Defendant knew that consumers, including Plaintiff, the Class, and the Subclass, were the ultimate consumers and the targets of the third-party online retailers, who were authorized to sell its Subject Paddles, and intended consumers to rely on the representations as to approval of the Subject Paddles and they were thus the intended beneficiaries of the implied warranties.

94.     Plaintiff relied on the representations of JOOLA as to the continued approval of the Subject Paddles. Had Plaintiff known that the Subject Paddles would, or could, be de-certified, he would not have purchased the Subject Paddles.

95.     Plaintiff and the Class and Subclass did not receive Subject Paddles as represented to them either directly by JOOLA or through third-party retailers based on USAP Approval because the Subject Paddles were never approved by USAP and thus were not fit for their ordinary purpose, i.e., the particular purpose for which they were sold.

96.     Thus, Defendant breached its implied warranties to Plaintiff and the Class and Subclass. As a direct and proximate result of such breach of implied warranties by Defendant, Plaintiff and Class Members and the Subclass suffered actual monetary damages.

WHEREFORE, Plaintiff and each Class Member is entitled to recovery of all sums paid to purchase a Subject Paddle, all damages allowable by law, punitive damages, and reasonable attorneys' fees.

## COUNT V
## NEGLIGENCE

97.     Plaintiff incorporates by reference paragraphs 1-50 of this Complaint as though fully stated herein.

98.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.

99.     Plaintiff brings this claim on behalf of himself and the Nationwide Class under the common law of negligence, as there are no true conflicts (case-dispositive differences) among various states' laws of negligence.

100.    In the alternative, Plaintiff brings this claim under the respective laws of Florida on behalf of a subclass comprised of: (a) all class members who purchased a Subject Paddle from JOOLA in Florida, and (b) all class members who purchased a Subject Paddle in states with substantially similar common law of negligence.

101.    At all times material hereto, Defendant, JOOLA, had the duty to use reasonable care to ensure that the correct paddle was provided to USAP as the governing body of pickleball paddle for testing.

102.    Furthermore, Defendant, JOOLA, had the duty to ensure that the paddle approved by USAP was in fact the same paddle that JOOLA stamped as USAP Approved, mass manufactured, sold into the chain of commerce, and used by consumers.

103.    Defendant, JOOLA, had a duty to ensure that their consumers could rely on the implied and express representations that they made regarding USAP Approval when selecting, purchasing, and using the Subject Paddles in practice and competition.

104.    Defendant, JOOLA, is liable, directly, vicariously or otherwise, for the negligence of its agents, employees, independent contractors, and representatives in providing the wrong paddles to USAP for testing and approval.

105.    At all times material hereto, Defendant, JOOLA, through its agents, servants, and employees, knew or in the exercise of reasonable care should have known that it provided seventeen (17) incorrect paddles to USAP for approval.

106.    Defendant, JOOLA, through its agents, servants, and employees, knew or in the

exercise of reasonable care should have known that it mass manufactured and sold into the stream of commerce nine (9) of the Subject Paddles with a USAP Approval stamp despite the fact that different paddles were submitted to USAP to obtain the approval.

107.     Defendant, JOOLA, through its agents, servants and employees, breached its duty to Plaintiff and Class Members, and acted in a careless and negligent manner through one or more of the following acts of omission or commission:

  a.  Failing to provide the exact same paddles they planned to sell for testing to USAP;

  b.  Stamping the Subject Paddles as USAP Approved despite having submitted different paddles for testing and approval; and

  c.  Committing an "Administrative Error" that resulted in USAP approving paddles other than those Defendant JOOLA ultimately entered into the stream of commerce;

  d.  Additional acts of negligence not yet discovered.

108.     By publicly admitting the "Administrative Error" Defendant JOOLA has admitted to its negligence causing the injury claimed herein.

109.     The negligence of Defendant proximately caused injury to Plaintiff and Class Members who cannot use the Subject Paddles in practice or competition.

110.     As a direct and proximate result of the negligence of JOOLA, Plaintiff and Class Members have been harmed.

WHEREFORE, Plaintiff and each Class Member is entitled to recovery of all sums paid to purchase a Subject Paddle, all damages allowable by law, punitive damages, and reasonable attorneys' fees.

### COUNT VI
### VIOLATION OF FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")
### Fla. Stat. § 501.203, et seq.

111.     Plaintiff repeats and realleges each and every allegation contained in paragraphs

1-49 above as if fully set forth herein.

112.    Plaintiff brings this claim under laws of Florida on behalf of a subclass comprised of all class members who purchased a Subject Paddle in: (a) Florida, and (b) all states with substantially similar consumer protection statutes prohibiting unfair and deceptive trade practices.

113.    In the alternative, Plaintiff brings this claim on behalf of a subclass of only those whose claims arise under Florida law.

114.    Defendant violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, et seq., by engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

115.    Defendant's scheme constitutes both an unfair act or practice, and a deceptive act or practice, which offends established public policy and is substantially injurious to consumers.

116.    Defendant made millions of dollars by deceiving Plaintiff and the class, exploiting USAP's power and position, and causing Plaintiff and the class to be deceived.

117.    As the intended and inevitable result of Defendant's conduct, Plaintiff and the class were subjected to material omissions and non-disclosures from their JOOLA.

118.    Defendant failed to disclose, actively concealed, and affirmatively mislead Plaintiff and the class about the lack of proper approval of the Subject Paddles by USAP, and represented the products to be something material different from what they were with the intent of causing Plaintiff and the Class to purchase the JOOLA.

119.    Defendant's misrepresentations and material omissions were likely to deceive a reasonable person under the circumstances, and Defendant knew this.

120.    Defendant owed a duty to disclose the true facts about USAP Approval because JOOLA: (a) possessed exclusive knowledge that the wrong paddles were submitted to USAP for

certification testing; (b) concealed the foregoing from Plaintiff and the class; and (c) made incomplete representations while purposefully withholding material facts that contradicted these representations.

121.    But for the misrepresentations and unscrupulous conduct, Plaintiff and the class would not have purchased the Subject Paddles.

122.    The injury to Plaintiff and the class is not outweighed by any off-setting consumer or competitive benefits, and the injury is one which consumers could not reasonably have avoided.

123.    The approval of the Subject Paddles by USAP would be material to a reasonable person and would likely affect his or her choice with respect to purchasing a Subject Paddle.

124.    Based on the foregoing, Defendant's actions caused or are likely to cause substantial injury to persons that they cannot reasonably avoid themselves, and that is not outweighed by countervailing benefits to persons or competition.

125.    Defendant's actions have offended established public policy and are unethical, oppressive, unscrupulous, or substantially injurious to persons.  As a result, Defendant has engaged in unfair acts or practices in violation of FDUTPA.

126.    Defendant's practices, as described above, constitute an "unfair," "deceptive," or "unconscionable" act or practice in violation of Fla. Stat. § 501.204(1).

127.    As a result of Defendant's unfair, deceptive, or unconscionable practices, Plaintiff and Class Members have been aggrieved and have suffered, or will suffer, actual damages.

128.    In addition to their actual monetary damages, Plaintiff and Class Members are also entitled, pursuant to Fla. Stat. § 501.211(1), to the following non-monetary relief:

> a.  A permanent injunction to prevent Defendant from continuing to engage in these unlawful practices; and

b.   A declaratory judgment that Defendant's above-mentioned conduct violates the

FDUTPA.

WHEREFORE, Plaintiff and Class Members are entitled to actual damages, declaratory

and injunctive relief, and all other relief allowable under FDUTPA, including the recovery of costs

and reasonable attorneys' fees in pursuing these claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, both individually and on behalf of the Nationwide Class and

State/Mutli-State Subclasses, demand a trial by jury on all claims so triable, and respectfully

request that the Court: (i) certify the proposed Nationwide and State Classes, (ii) designate the

named Plaintiffs as representatives of the Nationwide Class and their respective State/Multi-State

Subclasses, (iii) appoint the undersigned as Class Counsel, (iv) designate any appropriate issue

classes under the applicable provisions of Federal Rule of Civil Procedure 23, and (v) enter

judgment in Plaintiff's favor against Defendants including the following relief:

A.   Compensatory damages and costs for economic loss;

B.   Restitution and disgorgement of all profits, direct or indirect, illegally obtained;

C.   Equitable and injunctive relief, as permitted by law or equity;

D.   Statutory damages, treble damages, and penalties;

E.   Punitive and exemplary damages as permitted by law;

F.   A determination that Defendant is financially responsible for all Class notices and the administration of Class relief;

G.   An award of Plaintiff's attorneys' fees, costs, and expenses in this action to the maximum extent permitted by law;

H.   An award of pre-judgment and post-judgment interest to the maximum extent permitted by law; and

I.   Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by

jury of all issues so triable.

Dated: June 5, 2024

<div style="margin-left:40%;">

Respectfully Submitted,

Edwards Henderson

By: */s/ Bradley Edwards*
Brittany N. Henderson
Bradley J. Edwards
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954)-524-2820
Fax: (954)-524-2822
Email: brad@cvlf.com
        brittany@cvlf.com
        ecf@cvlf.com

David Boies (*pro hac vice* forthcoming)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
E-mail: dboies@bsfllp.com

Sigrid McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: smccawley@bsfllp.com

</div>