**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No: 024-cv-60954-DSL**

GREG MATUS, *on behalf of himself and all*
*others similarly situated*,

      Plaintiff,

v.

SPORT SQUAD, INC. D/B/A JOOLA,

      Defendant.

_____/

**DEFENDANT SPORT SQUAD, INC. D/B/A JOOLA'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT AND INCORPORATED**
**<u>MEMORANDUM OF LAW</u>**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT ................................. 4

III.  LEGAL STANDARD ........................................................................................... 6

IV.  ARGUMENT ...................................................................................................... 7

    A.  Plaintiff's Claims Must Be Dismissed to the Extent They Are Based on Alleged Violations of Non-Florida Law .......................................................................... 7

        1.  Plaintiff Lacks Standing to Assert Claims on Behalf of a Putative Nationwide Class or Non-Florida State Subclasses. ............................................... 8

        2.  Plaintiff Fails to State a Claim for Violations of Non-Florida Consumer Protection Statutes. ............................................................ 9

    B.  Plaintiff Fails to State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act (Count 4). ............................................................... 11

    C.  The Amended Complaint Fails to State a Claim for Unjust Enrichment (Count 1). ........ 14

    D.  The Amended Complaint Fails to State a Claim for Breach of Express Warranty (Count 2). ................................................................................. 16

    E.  Plaintiff Fails to State a Claim for Breach of Implied Warranty (Count 3). .................... 19

II.  CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................... 6, 7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................ 7

*Brodowicz v. Walmart, Inc.,*
No. 21-60643, 2022 U.S. Dist. LEXIS 100586 (S.D. Fla. June 6, 2022) ................................ 10

*Coleman v. Burger King Corp.,*
No. 22-CV-20925, 2023 U.S. Dist. LEXIS 149735 (S.D. Fla. Aug. 25, 2023)................. 10, 11

*Davila v. Delta Air Lines, Inc.,*
326 F.3d 1183 (11th Cir. 2003)................................................................................................ 7

*Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-941, 2022 U.S. Dist. LEXIS 165475, at *8
(M.D. Fla. Sept. 13, 2022)................................................................................................ 10

*Dorado v. Bank of Am., N.A.,*
No. 1:16-cv-21147, 2016 U.S. Dist. LEXIS 95215 (S.D. Fla. July 21, 2016)........................... 7

*Dye v. Bodacious Food Co.,*
No. 14-80627-CIV, 2014 U.S. Dist. LEXIS 180826 (S.D. Fla. Sep. 9, 2014) ........................ 16

*Feldman v. BRP US, Inc.,*
No. 17-CIV-61150, 2018 U.S. Dist. LEXIS 53298 (S.D. Fla. Mar. 28, 2018)........................... 8

*Fineman v. Ferragamo USA Inc.,*
672 F. Supp. 3d 1302 (S.D. Fla. 2023).................................................................................... 19

*Guerrero v. Target Corp.,*
889 F. Supp. 2d 1348 (S.D. Fla. 2012).................................................................................... 16

*Gutierrez v. Sullivan,*
338 So. 3d 971 (Fla. Dist. Ct. App. 2022)............................................................................... 14

*Hernandez v. HP Inc.,*
No. 1:22-cv-23482-PCH, 2023 U.S. Dist. LEXIS 89914 (S.D. Fla. May 23, 2023)............... 17

*In re Checking Account Overdraft Litig.,*
694 F. Supp. 2d 1302 (S.D. Fla. March 11, 2010) ................................................................... 8

*In re Takata Airbag Prod. Liab. Litig.*,
   462 F. Supp. 3d 1304 (S.D. Fla. 2020) ................................................................................. 9

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................................................................. 8

*Key W. Golf Club Homeowners Ass'n v. Singh Co.*,
   No. 1:19-cv-23685-JLK, 2020 U.S. Dist. LEXIS 220121 (S.D. Fla. Nov. 24, 2020) ............. 14

*Koski v. Carrier Corp.*,
   347 F. Supp. 3d 1185 (S.D. Fla. 2017) ............................................................................... 19

*Kurimski v. Shell Oil Co.*,
   570 F. Supp. 3d 1228 (S.D. Fla. 2021) ............................................................................... 12

*Licul v. Volkswagen Grp. of Am.*,
   No. 13-61686-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ............................................................................................................................................ 15

*Llado-Carreno v. Guidant Corp.*, No. 09-20971,
   2011 U.S. Dist. LEXIS 17088, *15 (S.D. Fla. Feb. 22, 2011) ................................................ 12

*Macbeg De Occidente S.A. de C.V. v. Kaloti Metals & Logistics, LLC*,
   No. 12-24050, 2013 U.S. Dist. LEXIS 194691 (S.D. Fla. June 25, 2013) .............................. 12

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ........................................................................................... 12

*Millennium Commc's & Fulfillment, Inc. v. Office of Atty. Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256 (Fla. 3rd DCA 2000) ................................................................................. 12

*Moss v. Walgreen Co.*,
   765 F. Supp. 2d 1363 (S.D. Fla. 2011) ............................................................................... 16

*Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ............................................................................................. 8

*Puig v. Sazerac Co., Inc.*,
   No. 2:23-cv-856, 2024 U.S. Dist. LEXIS 107649 (M.D. Fla. June 18, 2024) ........................ 12

*Razen v. FCA US LLC*,
   No. 6:19-cv-831-Orl-40LRH, 2019 U.S. Dist. LEXIS 223983 (M.D. Fla. Oct. 23, 2019) ...... 16

*Riley v. Gen. Motors, LLC*,
   664 F. Supp. 3d 1336 (M.D. Fla. 2023) ............................................................................... 9

iii

*Sanchez-Knutson v. Ford Motor Co.*,
   52 F. Supp. 3d 1223 (S.D. Fla. 2014)........................................................................ 18

*Sanchez-Knutson v. Ford Motor Co.*,
   No. 14-61344, 2015 U.S. Dist. LEXIS 181103 (S.D. Fla. July 22, 2015) .................................. 8

*Sclar v. OsteoMed, L.P.*,
   No. 17-23247-CIV, 2018 U.S. Dist. LEXIS 11373 (S.D. Fla. Jan. 24, 2018) ......................... 17

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
   No. 14-20107, 2014 U.S. Dist. LEXIS 59991 (S.D. Fla. Apr. 30, 2014) .................................. 7

*Tershakovec v. Ford Motor Co.*,
   No. 17-21087-CIV-MORE, 2018 U.S. Dist. LEXIS 116130 (S.D. Fla. July 12, 2018) .......... 17

*United States v. Air Fla., Inc.*,
   534 F. Supp. 17 (S.D. Fla. 1982) ......................................................................... 14

*Valiente v. Unilever United States, Inc.*,
   No. 22-21507-CIV, 2022 U.S. Dist. LEXIS 222409 (S.D. Fla. Dec. 8, 2022) ........................ 17

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006).......................................................................... 10

*Warner v. Tinder, Inc.*,
   No. 15-23790, 2018 U.S. Dist. LEXIS 8941 (S.D. Fla. Jan. 18, 2018) .................................. 13

*Weiss v. Gen. Motors LLC*,
   418 F. Supp. 3d 1173 (S.D. Fla. 2019)..................................................................... 9

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007)........................................................................... 12

**Statutes**

Fla. Stat. § 501.203 ........................................................................................ 9

Fla. Stat. § 501.204(1)..................................................................................... 11

Fla. Stat. § 672.313(1)..................................................................................... 16

Fla. Stat. § 672.607(3)(a) ................................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................... 7, 8, 9

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 7, 11

Fed. R. Civ. P. 12(e) ................................................................................................................. 10

I.      **INTRODUCTION**

This case involves pickleball, the fastest growing sport in the United States. To the extent that the Court is unfamiliar with the sport, picture a miniature tennis court on which players use paddles that resemble oversized table tennis paddles to volley a hard plastic ball over a net.[1] The Defendant in this putative class action, Sport Squad, Inc., which does business as "Joola," makes some of the most popular, highly-rated, and advanced pickleball paddles available. Joola invests a tremendous amount of time, expense, and effort to develop the best pickleball paddles on the market. Just as tennis rackets and golf clubs are under constant development and refinement to give players of those sports better results and an advantage over competitors, so too are Joola's pickleball paddles.

Pickleball's popularity is fueled in part by its accessibility. A pickleball "court" can be created simply by using chalk to draw lines on a driveway, and the sport can be enjoyed by people of all ages and athletic abilities. On the other side of the spectrum from a makeshift court on a driveway is the professional pickleball league—the "PPA" or Professional Pickleball Association (www.ppatour.com). Between these two extremes exists a large category of pickleball enthusiasts who regularly practice and participate in organized pickleball tournaments. Based upon the allegations in the Amended Complaint (the "AC") in this case, it appears that the Plaintiff, Greg Matus, falls into this category.

Joola's excellent reputation for innovation and dedication to the sport and its players of all skills and levels is well-deserved, and it would never do anything intentionally that could

---

[1] Despite the sport's name, pickleball has nothing to do with pickles. Legend has it that the inventors of the sport—believed to be a couple of neighbors in Washington State back in the mid-1960's—named the sport after the pickle boats in crew, which would often be the least competitive boats in a race. The lore that the sport was named after one of the inventor's dogs, Pickles, has been largely discredited.

compromise its goodwill. That is why it is both unfortunate and unfair that Joola now finds itself responding to a host of baseless allegations asserted by a customer, Mr. Matis, and also embroiled in another lawsuit – pending in the United States District Court for the District of Maryland – with an organization called USA Pickleball ("USAP"), the self-proclaimed "national governing body" for the sport.

The action in this Court and in Maryland involve a line of Joola paddles called "Gen3" that were released to the market in the spring of 2024. These paddles were the product of a tremendous amount of research and development, as all Joola paddles are, and they were received with overwhelming praise when released. As the AC alleges, in late 2023, the USAP approved or certified Joola's new paddles and expressly authorized Joola to market them to the public as "USA Pickleball Approved." Plaintiff, Mr. Matus, alleges that he purchased two of these paddles in April 2024, in reliance on that USAP approval.

About a month later, in May of 2024, the USAP revoked its approval of the paddles. It claimed that the Gen3 paddles lost their approval status because Joola had not properly submitted them for approval in 2023. The lawsuit between Joola and USAP in Maryland concerns the USAP's improper and damaging revocation of approval.[2] In the case before this Court, Mr. Matus contends that Joola committed a deceptive trade practice under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), breached express and implied warranties, and was unjustly enriched when it sold him paddles that were marketed as USAP approved because the approval was revoked after he purchased them.

Joola moved to dismiss the Original Complaint on July 26, 2024, identifying numerous flaws in Plaintiff's claims. *See* ECF No. 12. In response, on August 19, 2024, Mr. Matus filed an

---

[2] The Maryland case is captioned as *Sport Squad, Inc. v. USA Pickleball Ass'n*, Case No. 8:24-cv-1712 (D. Md. June 12, 2024).

Amended Complaint (ECF No. 18) (the "AC"). Plaintiff alleges that Joola marketed its new paddles as "USA Pickleball Approved" even though it purportedly knew that the USAP would later revoke approval.[3] Notably, Plaintiff does not dispute that the pickleball paddles at issue were in fact on the USAP's "approved paddles list" at the time they were sold to him. He instead claims that Joola impliedly warranted that the paddles "would remain" approved indefinitely and that he would be able to use them in all future USAP-sanctioned tournaments. Plaintiff further alleges that he would not have purchased the paddles had he known that the USAP would change its mind about approving them.

The AC contends, without any factual basis, that an administrative error that occurred during the certification process for Joola's Gen3 paddles—an error that Joola readily acknowledges and had even self-reported to the USAP before this suit was filed—was in reality an intentional effort by Joola to deceive consumers. If Plaintiff's case survives dismissal, which it should not, Joola will prove why Plaintiff's allegations of intentional deception and wrongdoing are complete fiction.

Despite taking the opportunity to substantially re-write his Original Complaint to avoid dismissal, Plaintiff's AC still fails to plead viable causes of action against Joola. His AC utterly fails to address many of the arguments raised in Joola's initial motion to dismiss. As further explained below, Plaintiff's FDUPTA claim is deficient because Joola's statements regarding its paddles were true when made. In addition, Plaintiff's unjust enrichment claim fails because it is entirely duplicative of his FDUPTA claim, and Plaintiff's claims for breach of express warranty

---

[3] After the USAP had approved Joola's new paddle design and specifically informed Joola in writing that the new paddles could be marked as "USA Pickleball Approved," Joola manufactured over one hundred thousand paddles in reliance on that approval. Plaintiff's allegation that Joola engaged in an elaborate plot to trick the USAP into approving its paddles so that it could then sell unapproved paddles to consumers belies common sense.

and breach of implied warranty fail because Plaintiff did not give Joola pre-suit notice of the alleged warranty violations before initiating this action. In addition, Plaintiff lacks standing to assert claims on behalf of non-Florida class members and, even if he did have such standing, he has failed to allege the elements of a violation of any non-Florida law.

Therefore, for all of these reasons, each of Plaintiff's four causes of action against Joola should be dismissed with prejudice.

## II.  FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff Greg Matus ("Plaintiff" or "Mr. Matus") is the sole plaintiff in this putative class action case. Mr. Matus is a resident of Fort Lauderdale, Florida, and he alleges that he purchased two of Joola's pickleball paddles in Florida on April 17, 2024. *See* AC at ¶¶ 17, 19.

The AC labels the Gen3 paddles at issue in this matter, including the models purchased by Mr. Matus, as the "Subject Paddles." *See* AC at ¶¶ 3, 19. The Subject Paddles encompass nine different paddle models sold by Joola. *See* AC at ¶ 3. Plaintiff claims that he purchased two paddles with the model name "Tyson McGuffin Magnus 4 16mm." *See* AC at ¶ 19.

Plaintiff alleges that the USAP is the "National Governing Body for the sport of pickleball in the United States." *See* AC at ¶ 2. Plaintiff claims that the USAP is "responsible for developing and implementing the official rules of pickleball" and that, in that capacity, it "established the Equipment Evaluation Committee ('EEC') to develop pickleball equipment testing standards" to "ensure that all USA Pickleball approved equipment meets rigorous standards." *See* AC at ¶¶ 22-23.

According to the AC, the saga that underlies the current dispute began in September 2023, when Joola submitted to the USAP two "base model" paddles for approval. *See* AC at ¶ 4. That approval was granted shortly thereafter. *Id.* A month later, in November 2023, Joola submitted nine additional paddle models to the USAP for "similarity testing," and those paddle models were

also approved in 2023. *See* AC at ¶ 5. Plaintiff claims that Joola "then mass manufactured tens of thousands of completely different paddles, the Subject Paddles, bearing the same name as those that had been approved in November." *See* AC at ¶ 6. Those paddles were stamped as "USA Pickleball Approved," and those were the paddles that Plaintiff ended up purchasing. *See* AC at ¶ 28.

Plaintiff also alleges that in early 2024, before the Subject Paddles went on sale to the public, the USAP "conducted a teardown of the paddles" and examined "the extent of foam around the rim" of the paddles. *See* AC at ¶ 31. Plaintiff claims that following this examination, the USAP believed that Plaintiff's paddles did not comply with the USAP's regulations. *See* AC at ¶ 9. Yet, despite supposedly reaching this conclusion, the USAP did not move to revoke its approval of the Subject Paddles at that time, and Plaintiff does not allege otherwise.

Plaintiff claims that he would not have purchased the Subject Paddles if they had not been marketed as approved by the USAP. *See* AC at ¶¶ 101, 105. However, Plaintiff also acknowledges that the Subject Paddles "were approved for use in USAP sanctioned events" at the time he purchased them. *See* AC at ¶¶ 19, 41. Plaintiff then claims, without factual support, that Joola knew at the time it sold the Subject Paddles that they would lose their certification status with the USAP. *See* AC at ¶ 34. Plaintiff adds that Joola specifically withheld this supposed insider knowledge from Plaintiff when it sold him the paddles. *See* AC at ¶¶ 120, 122.

On May 16, 2024, a month after Plaintiff purchased his two paddles, the USAP withdrew its approval for the Subject Paddles. *See* AC at ¶ 41. As *the USAP* explained in a press release that the AC reproduces in part, Joola *self-reported* to USAP that it had "submitted the wrong paddles for certification in November 2023." *Id.* Following the decertification, Joola issued a public statement explaining that the USAP's decision to remove the Subject Paddles from the "approved

paddles list" was the result of an "administrative error" that Joola made inadvertently during the paddle submission process. *See* AC at ¶ 44. On May 24, 2024, Joola again reiterated that the de-listing was caused by an administrative error on its end. *See* AC at ¶ 46. Plaintiff alleges, however, that the administrative error was in reality an intentional plan to deceive consumers into purchasing non-complaint paddles. *See* AC at ¶¶ 40, 52-53. These allegations belie common sense. Why would a company intentionally manufacture and sell non-compliant paddles for only a month before *self-reporting* that fact, which, according to the AC, the company knew would result in the decertification of those paddles?

In any event, the AC also claims that, "[i]mmediately following the news of decertification, USAP sanctioned tournaments began informing their professional and amateur competitors that they would not be permitted to compete in the tournament using a Subject Paddle." *See* AC at ¶ 49. According to the AC, after USAP had revoked its approval for the Subject Paddles, Joola resubmitted additional paddles to the USAP for evaluation, but that the USAP found those paddles to be lacking as well. *Id.* at ¶ 52.

Plaintiff initially filed suit against Joola regarding his paddle purchase on June 5, 2024, asserting claims for, among other things, breach of the express warranty and breach of the implied warranty that the paddles were, and allegedly would always remain, USAP approved. *See* ECF No. 1, at Counts III and IV. On July 26, 2024, Joola moved to dismiss all claims in the Original Complaint. *See* ECF No. 12. On August 23, 2024, Plaintiff filed his AC, which, among other things, acknowledges that he waited until August 13, 2024, to provide notice to Joola of its alleged breaches of warranty. *See* AC at ¶¶ 95, 112.

## III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions, or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Although it must accept well-pled facts as true, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft*, 129 S. Ct. at 1949 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Moreover, conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Importantly, a named plaintiff asserting claims on behalf of a class is held to these same pleading standards and cannot rely on the potential claims of other, unnamed putative class members at the Rule 12(b)(6) stage. *See Dorado v. Bank of Am., N.A.,* No. 1:16-cv-21147, 2016 U.S. Dist. LEXIS 95215, at *18-19 (S.D. Fla. July 21, 2016) (noting that plaintiff was "mistaken" in her position that she is entitled to proceed on behalf of unnamed putative class members even if she fails to state a claim) (citing *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107, 2014 U.S. Dist. LEXIS 59991, at *1 (S.D. Fla. Apr. 30, 2014) (dismissing putative class action complaint where named plaintiff failed to state a claim).

## IV.  ARGUMENT

### A.    Plaintiff's Claims Must Be Dismissed to the Extent They Are Based on Alleged Violations of Non-Florida Law.

The Court should dismiss Plaintiff's claims arising from non-Florida law pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because Plaintiff does have standing to assert claims under the

laws of other states and because, even if he did have standing, he fails to state such claims in this case.

       1.      <u>Plaintiff Lacks Standing to Assert Claims on Behalf of a Putative Nationwide Class or Non-Florida State Subclasses.</u>

"[I]t is well-settled that prior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Sanchez-Knutson v. Ford Motor Co.,* No. 14-61344, 2015 U.S. Dist. LEXIS 181103, at *2 (S.D. Fla. July 22, 2015) (citations omitted). "Federal Courts cannot exercise jurisdiction over cases where the parties lack standing." *Id.* For this reason, named plaintiffs in class actions are commonly prohibited from asserting claims under a state law other than the law of the state in which the plaintiff's own claim arises. *See, e.g., Feldman v. BRP US, Inc.,* No. 17-CIV-61150, 2018 U.S. Dist. LEXIS 53298, at *19 (S.D. Fla. Mar. 28, 2018) ("Mr. Feldman's claims either arise under, or depend on, Florida law. He therefore lacks standing to assert claims on behalf of class members who purchased Class PWCs outside of Florida.").

Moreover, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado,* 221 F.3d at 1280; *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. March 11, 2010) (dismissing, for lack of standing, "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) ("[T]he named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief. Class allegations that others suffered injuries giving rise to claims add . . . nothing to the question of

standing."); *Riley v. Gen. Motors, LLC,* 664 F. Supp. 3d 1336, 1344 (M.D. Fla. 2023) ("The remaining named Plaintiffs bought their cars in Florida and California [. . .] [s]o they have standing to bring claims on behalf of putative subclass members who bought cars in those states. But this does not extend to consumers who bought their cars in other states.") (citations omitted).

Furthermore, as "standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature." *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1179 (S.D. Fla. 2019) (concluding that plaintiff lacked standing to assert claims on behalf of class members who purchased GM vehicles outside of Florida); *In re Takata Airbag Prod. Liab. Litig.,* 462 F. Supp. 3d 1304, 1335–36 (S.D. Fla. 2020) ("Same as before, the Court finds no reason to wait until the class certification stage to decide whether the named-Plaintiffs of only a handful of states can establish standing for putative class members of several unrepresented states in order to state a nationwide-class [].").

Plaintiff's AC alleges that Mr. Matus resides in and purchased the Subject Paddles in Florida. *See* AC ¶¶ at 17, 19. Plaintiff's claims therefore arise solely under Florida law. Thus, Plaintiff does not have standing to assert claims under the laws of other states, and the Court should dismiss Plaintiff's claims pursuant to Fed. R. Civ. Proc. 12(b)(1) to the extent he purports to bring them on behalf of a nationwide class or on behalf of non-Florida subclasses.

      2.   <u>Plaintiff Fails to State a Claim for Violations of Non-Florida Consumer Protection Statutes.</u>

Even if Plaintiff had standing to assert violations of non-Florida consumer protection statutes, Plaintiff's AC would still fail because it does not identify the requisite elements of each non-Florida statute. *See, e.g.,* Count IV, ¶ 114 (alleging violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203, *et seq.*, and "all states with substantially similar consumer protection statutes prohibiting unfair and deceptive trade practices"). This blanket

pleading approach is insufficient as a matter of law because "[a] Plaintiff is required to separate each cause of action into a separate paragraph, and they must support each cause of action with specific (non-conclusory) factual allegations." *See Coleman v. Burger King Corp.,* No. 22-CV-20925, 2023 U.S. Dist. LEXIS 149735, at *6-7 (S.D. Fla. Aug. 25, 2023). This Court explained:

> The Plaintiffs' first cause of action lists—in a single paragraph that spans four pages—fifty different state (and DC) consumer-protection statutes. [. . .] The count then follows this prodigious list with one brief, conclusory allegation: 'Defendant' the Plaintiffs say, 'violated the above stated consumer protection laws by its deceptive practices and Plaintiffs and Class members were damaged as a result, the exact amount to be determined at trial.' [. . .] This won't do. The Plaintiffs 'must separate each cause of action into a separate paragraph, and they must support each cause of action with specific (non-conclusory) factual allegations.'

*Id.* at *2. (quoting *Brodowicz v. Walmart, Inc*., No. 21-60643, 2022 U.S. Dist. LEXIS 100586, at *4 (S.D. Fla. June 6, 2022); *accord Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-941, 2022 U.S. Dist. LEXIS 165475, at *8 (M.D. Fla. Sept. 13, 2022) ("Mixing causes of action and failing to separate them into separate counts is problematic because it muddles which facts go to which claims and prevents each claim from standing on its own merit before the Court."); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006) ("We [] remind district courts of their supervisory obligation to *sua sponte* order repleading pursuant to  Fed. R. Civ. P. 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates.").

Thus, because Plaintiff has not alleged the elements of any non-Florida statutes he claims have been violated, his claims must be dismissed to the extent they are based on those statutes. Notably, Defendant's Motion to Dismiss Plaintiff's Original Complaint included this same argument (*see* ECF No. 12 at pp. 6-9). Plaintiff, however, elected not amend his complaint to include separate counts for each state consumer protection statute but to maintain the inappropriate, blanket approach type of pleading that this Court has rejected. Accordingly, the

Court should not grant leave for Plaintiff to amend his AC in order to remedy this pleading deficiency to which Plaintiff was already alerted prior to amending.

Furthermore, it would be futile for Plaintiff to further amend his AC again, as Plaintiff cannot state a claim against Joola pursuant to the consumer protection statutes of states in which he did purchase the Subject Paddles. *See Coleman,* 2023 U.S. Dist. LEXIS 149735, at *8-9 (Plaintiffs "must file a second amended complaint that includes consumer-protection counts *only* for those states in which the named plaintiffs purchased their Burger King products."). Mr. Matus cannot allege a claim under another state's consumer protection statute if he cannot allege that he purchased the defendant's product in that state or that he was exposed to deceptive statements while present in that state. *See Coleman,* 2023 U.S. Dist. LEXIS 149735, at *8-9 (holding that a Florida plaintiff "would fail to state a viable claim [for a violation of a Georgia consumer protection statute]" under Rule 12(b)(6) because "he'll have failed to meet the *requirements* of Georgia law—principally because he'll have failed to show any connection between his injury and any activity by the defendant in the State of Georgia.") (emphasis in original).

Plaintiff's AC (i) does not identify the elements of any non-Florida statute; (ii) does not allege that Plaintiff purchased a Subject Paddle outside of Florida; and (iii) does not allege that Plaintiff was subject to deceptive practices outside of Florida. Accordingly, Plaintiff fails to state a claim against Joola pursuant to any non-Florida consumer protection statute, and his claims must be dismissed to the extent he brings them under non-Florida law.

**B.      Plaintiff Fails to State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act (Count 4).**

The Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a claim under FDUTPA,

Plaintiff must allege "(1) a deceptive act or unfair practice, (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021).

Under FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1242-43 (S.D. Fla. 2021). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Millennium Commc's & Fulfillment, Inc. v. Office of Atty. Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1263 (Fla. 3rd DCA 2000)).

"There is a split of authority among the district courts as to whether Rule 9(b) applies to claims brought under FDUTPA." *Macbeg De Occidente S.A. de C.V. v. Kaloti Metals & Logistics, LLC*, No. 12-24050, 2013 U.S. Dist. LEXIS 194691, at *7-8 (S.D. Fla. June 25, 2013). However, "[t]he particularity requirement of Rule 9(b) applies to all claims that sound in fraud[.]" *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 U.S. Dist. LEXIS 17088, *15 (S.D. Fla. Feb. 22, 2011). Therefore, in cases where the FDUTPA claim "sounds in fraud," many courts have applied the heightened pleading standard set forth in Rule 9(b). *See Puig v. Sazerac Co., Inc.*, No. 2:23-cv-856, 2024 U.S. Dist. LEXIS 107649, at *17 (M.D. Fla. June 18, 2024) (holding that plaintiff's FDUTPA claim must comply with Rule 9(b)'s heightened pleading standard since the complaint "consistently refers to misrepresentations and falsehoods."). Here, Plaintiff's FDUTPA claim sounds in fraud because he alleges that Joola "failed to disclose, actively concealed, and affirmatively mislead" purchasers. *See* AC at ¶ 120. Thus, the heightened pleading standard set forth in Rule 9(b) applies.

Plaintiff's FDUTPA claim is deficient because Plaintiff does not adequately plead that

Joola committed a deceptive act. According to the Plaintiff, Joola deceived him by advertising the Subject Paddles as USAP-approved when they were not. *See* AC at ¶ 120. However, as acknowledged in the AC, the paddles were on the USAP's approved paddles list on the date that Mr. Matus purchased them. *See* AC at ¶ 41 (alleging that "on May 16, 2024, USAP *removed* the Subject Paddles from its 'Approved Pickleball Paddles' list.") (emphasis added). This allegation, of course, also establishes that the paddles *were on that approved list* prior to May 16, 2024, when Plaintiff purchased the paddles. Accordingly, Joola's statement that the paddles were "USA Pickleball approved" was accurate at the time it was made to the Plaintiff. There was nothing deceptive about it. *See Warner v. Tinder, Inc.*, No. 15-23790, 2018 U.S. Dist. LEXIS 8941, at *20 (S.D. Fla. Jan. 18, 2018) (finding no deception when plaintiff was told app was "free" because plaintiff failed to plead facts that showed the app was not free when he downloaded it).

Moreover, Plaintiff's conclusory allegation that Joola "knew" the Subject Paddles would later be decertified by the USAP does not salvage Plaintiff's FDUPTA claim. There is no allegation in the AC that Joola made representations to the public regarding how long the Subject Paddles would remain on the USAP's approved paddles list or that Joola guaranteed that an independent third-party, the USAP, would never revoke its approval (because no such representations were made). Joola's sole representation to Plaintiff at the time he purchased the Subject Paddles was that the paddles were "USA Pickleball Approved"—which was true. *See* AC at ¶ 12.

Furthermore, the allegations in the AC provide no factual basis for inferring that Joola "knew" at the time of sale that the Subject Paddles would later be decertified. As alleged in the AC, before the Subject Paddles went on sale, the USAP (1) conducted a "teardown" of the Subject Paddles and (2) "observed the extent of foam around the rim" of the paddles. *See* AC at ¶ 31. And then nothing happened—the Subject Paddles remained on the USAP's approved paddles list and

went on sale as scheduled. *See* AC at ¶¶ 34, 41. It was only a month later, when the USAP was informed of an "administrative error," which Plaintiff—without any evidence—claims was made intentionally, that approval was revoked. *See* AC at ¶¶ 40-41. This approval revocation, however, is not alleged to have had anything to do with the April 2024 "teardown" inspection a month earlier (the same month that Plaintiff alleges he purchased his paddles).

Thus, even accepting Plaintiff's allegations as true, there is no factual support for Plaintiff's conclusory assertion that Joola "knew" at the time of sale that the Subject Paddles would later be decertified—which as explained above, is implausible. *See United States v. Air Fla., Inc.*, 534 F. Supp. 17, 20 (S.D. Fla. 1982) ("although on a motion to dismiss the well pleaded allegations of fact are taken as true, the court need not accept conclusions of law or sweeping legal conclusions cast in the form of factual allegations"); *Key W. Golf Club Homeowners Ass'n v. Singh Co.*, No. 1:19-cv-23685-JLK, 2020 U.S. Dist. LEXIS 220121, at *4 (S.D. Fla. Nov. 24, 2020) ("Although the court must accept all well-pled facts as true, it need not accept conclusory allegations").

Therefore, because Plaintiff fails to adequately plead a deceptive act, the Court should dismiss his FDUTPA claim against Joola.

C.    **The Amended Complaint Fails to State a Claim for Unjust Enrichment (Count 1).**

The Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative of Plaintiff's FDUTPA claim.

To state a claim for unjust enrichment under Florida law, Plaintiff must plead that "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Gutierrez v. Sullivan*, 338 So. 3d 971, 975 (Fla. Dist. Ct. App. 2022). A claim for unjust

enrichment, however, "is an equitable cause of action that is unavailable where the underlying wrongs are properly addressed by a legal remedy." *Licul v. Volkswagen Grp. of Am.*, No. 13-61686-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 171627, at *18-22 (S.D. Fla. Dec. 5, 2013). Accordingly, although "[a] plaintiff may plead unjust enrichment as an alternative theory to a legal cause of action[,]" if the claim "relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Id.* Thus, a plaintiff's unjust enrichment claim must be dismissed if, as here, it is "a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by [] other legal causes of action." *Id.*

Mr. Matus alleges that Joola was unjustly enriched because he paid Joola more for the paddles than they were worth "by virtue of [Joola's] deceptive business practice." *See* AC at ¶¶ 76, 78. According to the Plaintiff, Defendant's "deceptive business practice" was that it sold pickleball paddles marked as "USA Pickleball Approved" when it (allegedly) knew that USAP would later remove the paddles from the "approved list." *See* AC at ¶¶ 1, 8. In other words, the factual predicate for Plaintiff's unjust enrichment claim is the same as it is for his FDUTPA claim. *Compare* AC at ¶¶ 1, 8, 78 *with* AC at ¶ 120, 122.

The Court addressed this very type of pleading approach in *Licul v. Volkswagen*, 2013 U.S. Dist. LEXIS 171627. In that matter, plaintiffs alleged unjust enrichment and a FDUTPA violation against Volkswagen for having sold sedans with a defective door-locking mechanism. *Id.* at *1-2. The *Licul* court, however, dismissed the unjust enrichment claim as duplicative of the FDUTPA claim, characterizing it as "a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by [plaintiffs'] other legal causes of action." *Id.* at *20. The court even scolded plaintiffs for "mak[ing] no effort to distinguish the 'misconduct' and 'unfair

and deceptive conduct' supporting their unjust enrichment claim from the alleged wrongdoing underlying their FDUTPA claim." *Id.; accord, Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) (dismissing putative class action claim for unjust enrichment where plaintiff "[sought] recovery for the exact same wrongful conduct as in her FDUTPA claim").

Like in *Licul v. Volkswagen*, Plaintiff's unjust enrichment claim exactly duplicates his FDUTPA claim. Plaintiff—even after amending his complaint—makes "no effort to distinguish" how the basis for the unjust enrichment claim is different from the basis for the FDUTPA claim. Thus, Plaintiff's unjust enrichment claim still fails, and the Court should dismiss it with prejudice.

### D.    The Amended Complaint Fails to State a Claim for Breach of Express Warranty (Count 2).

The Court should dismiss Plaintiff's claim for breach of express warranty because Plaintiff did not provide Joola with pre-suit notice of the alleged breach before initiating this action—as mandated by Florida law. Plaintiff's claim also fails because the AC does not allege that Joola breached any express warranty made to Mr. Matus at the date of his purchase.

To state a claim for breach of express warranty in Florida, a plaintiff must plead the "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *See Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363, 1368 (S.D. Fla. 2011). "[A]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Dye v. Bodacious Food Co.*, No. 14-80627-CIV, 2014 U.S. Dist. LEXIS 180826, at *15 (S.D. Fla. Sep. 9, 2014) (citing Fla. Stat. § 672.313(1)). In this way, the "language of the warranty sets forth the scope of the express warranties made by the defendant." *Razen v. FCA US LLC*, No. 6:19-cv-831-Orl-40LRH, 2019 U.S. Dist. LEXIS 223983, at *13-14 (M.D. Fla. Oct. 23, 2019).

16

Moreover, "[u]nder Florida law, in order to recover for a claim of breach of express warranty, the buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See Sclar v. OsteoMed, L.P.*, No. 17-23247-CIV, 2018 U.S. Dist. LEXIS 11373, at *4-6 (S.D. Fla. Jan. 24, 2018) (citing Fla. Stat. § 672.607(3)(a)). Furthermore, Plaintiff must give notice of an alleged breach of warranty *before* filing suit—not after. *See Valiente v. Unilever United States, Inc.*, No. 22-21507-CIV, 2022 U.S. Dist. LEXIS 222409, at *49 (S.D. Fla. Dec. 8, 2022) ("Because Plaintiff failed to allege that she gave Defendant pre-suit notice of the breach, the claim for breach of express warranty must be dismissed without prejudice for failure to state a claim upon which relief can be granted."); *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV-MORE, 2018 U.S. Dist. LEXIS 116130, at *22 (S.D. Fla. July 12, 2018) ("Their notice, however, is unreasonably tardy and does not comply with Florida law, because it was given on . . . the eve of the original Complaint's filing").

Joola's July 26, 2024 Motion to Dismiss Plaintiff's Original Complaint sought dismissal of Plaintiff's warranty claim for failure to plead compliance with the pre-suit notice requirement under Florida Law. *See* ECF No. 12 at p. 22. The AC now alleges that Plaintiff provided the requisite written notice to Joola of his warranty claim—but acknowledges that notice was not served until August 13, 2024. *See* AC at ¶ 95.

This timing is deficient as a matter of law. A plaintiff must give notice of a breach of warranty claim *before* filing suit (this requirement is intended to allow the seller the opportunity to correct the alleged deficiency without requiring the parties to resort to costly litigation). *See, e.g., Valiente*, 2022 U.S. Dist. LEXIS 222409, at *48 ("the point of the notice requirement is to allow the warrantor an opportunity to cure the problem rather than defend a lawsuit"); *Hernandez*

17

*v. HP Inc.*, No. 1:22-cv-23482-PCH, 2023 U.S. Dist. LEXIS 89914, at *10 (S.D. Fla. May 23, 2023) ("to state the obvious, it's called **pre**-suit notice for a reason") (emphasis in original). This failure alone requires the dismissal of Plaintiff's express warranty claim. Because further amendment would be futile in resolving this deficiency, the dismissal should be with prejudice.

Substantively, Plaintiff's express warranty claim fails because the AC does not describe any express warranty that Joola actually breached. According to the AC, the Subject Paddles sold to Mr. Matus were stamped as "USA Pickleball Approved." *See* AC at ¶¶ 12, 19. Plaintiff also alleges that the Subject Paddles were in fact on USAP's "approved paddles list" as of April 17, 2024, the date he purchased them. *See* AC at ¶ 41. Thus, by Plaintiff's own allegations, Joola's representation that the Subject Paddles were "USAP Pickleball Approved" was accurate at the time it was made to Mr. Matus, meaning that no express warranty was breached.

Plaintiff tries to wiggle around this inconvenient fact by alleging that Joola also warranted that the Subject Paddles "would remain" USAP approved. *See* AC at ¶ 92. Yet, Plaintiff does not identify a specific written or oral statement anywhere in his AC where Joola represented that the Subject Paddles would remain on the USAP's approved list for any amount of time (because it did not). Joola's warranty obligations are limited as a matter of Florida law to the actual language of the warranty. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1231 (S.D. Fla. 2014)) ("the language of the Warranty [] sets forth the scope of the express warranties made by [defendant]"). Each of the Subject Paddles, including the Plaintiff's paddles, looked like this, according to Paragraph 34 of the AC:



Thus, the only express warranty that Joola made to Plaintiff was that the Subject Paddles were "USA Pickleball Approved." Joola did not expressly represent that the paddles would "remain approved" for any particular length of time. Accordingly, even accepting Plaintiff's allegations as true, Plaintiff has not alleged facts showing that Joola warranted that the Subject Paddles "would remain" USAP approved. Thus, even had Plaintiff provided the requisite pre-suit notice, his AC would still fail to state a claim for breach of any express warranty.

**E.      Plaintiff Fails to State a Claim for Breach of Implied Warranty (Count 3).**

The Court should dismiss Plaintiff's breach of implied warranty claim for the same reasons that require dismissal of his breach of express warranty claim.

The pre-suit notice requirement also applies to an implied warranty claim. *See Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1306-07 (S.D. Fla. 2023) ("Plaintiffs have failed to meet their burden to show that they provided the required pre-suit notice [of their breach of implied warranty claims] to any Defendant. Counts One through Three should be dismissed on this basis alone.").[4] Accordingly, because Plaintiff failed to provide Joola with pre-suit notice of its implied warranty claim, it too must be dismissed with prejudice. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017) (agreeing that breach of implied warranty claims "should be dismissed with prejudice because the Plaintiffs failed to provide pre-suit notice of the alleged defect to the Defendants as required by Florida law").

Second, Plaintiff fails to allege any implied warranty that Joola breached. Other than the "USA Pickleball Approved" stamp placed on the Subject Paddles, Plaintiff does not allege that Joola made any other statement, express or implied, regarding the Subject Paddles. Thus, just as the "USA Pickleball Approved" stamp does not support a claim for breach of express warranty

---

[4] Joola also raised this pre-suit notice deficiency in its Motion to Dismiss Plaintiff's Original Complaint. *See* ECF No. 12 at pp. 24-25.

because it was true when made, it does not support a claim for breach of implied warranty, either.

Third, Plaintiff claims that he thought Joola's "USA Pickleball Approved" stamp carried the implication that the Subject Paddles would "continue" to be USAP approved (and therefore authorized for tournament play) after they were sold to Plaintiff. *See* AC at ¶¶ 101, 109. However, that assertion is contradicted by the allegations of his own AC, where Plaintiff repeatedly asserts that the USAP is the governing body for pickleball and that the USAP "will continue to evaluate paddles in the market in order to ensure [] existing . . . standards are being met." *See* AC at ¶¶ 2, 22, 41. Thus, accepting Plaintiff's allegations as true, Joola could not have plausibly warranted by implication that USAP would never revisit its approval of Joola's paddles. Thus, the Court should dismiss, with prejudice, Plaintiff's wholly deficient implied warranty claim.

II.     **<u>CONCLUSION</u>**

The Court should dismiss with prejudice each of the four causes of action asserted by Plaintiff in its Amended Complaint against Defendant Sport Squad, Inc., and also find that Plaintiff lacks standing to assert violations of, and in any event failed to adequately plead violations of, the consumer protection and related laws of other states.

Date: September 6, 2024                       Respectfully submitted,

                                              <u>*/s/ Justin C. Fineberg*</u>
                                              **Justin C. Fineberg**
                                              Florida Bar No. 0053716
                                              jfineberg@lashgoldberg.com
                                              **Emily L. Pincow**
                                              Florida Bar No. 1010370
                                              epincow@lashgoldberg.com
                                              **LASHGOLDBERG**
                                              Lash Goldberg Fineberg LLP
                                              Miami Tower, Suite 1200
                                              100 S.E. Second Street
                                              Miami, Florida 33131
                                              Tel: (305) 347-4040
                                              Fax: (305) 347-4050

Joshua A. Glikin (*admitted pro hac vice*)
Shulman Rogers
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Tel: (240) 499-7895
Fax: (301) 230-2891
E-mail: JGlikin@shulmanrogers.com

*Counsel for Defendant Sport Squad, Inc.*