## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| Greg Matus, *on behalf of himself and all others similarly situated*, | : |
| | : |
| | : |
| Plaintiff, | : |
| vs. | : |
| | : |
| Sport Squad, Inc. d/b/a JOOLA, | : |
| | : |
| Defendant. | : |

Case No. 24-cv-60954-DSL

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
## <u>AMENDED CLASS ACTION COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................................ 1

STATEMENT OF THE FACTS............................................................................................................ 3

LEGAL STANDARD............................................................................................................................ 5

MEMORANDUM OF LAW ................................................................................................................. 6

I.      Plaintiff Has Sufficiently Pled His Allegations on Behalf of the Proposed Class. ........................ 6

        A.      Plaintiff Has Standing to, and May Represent, Class Members in Other States with
                Claims Subject to Different State Laws.................................................................................. 6

        B.      Plaintiff May Also Represent Class Members Whose Consumer Protection Claims
                are Based on Violations of Non-Florida Consumer Protection Statutes............................. 9

II.     Plaintiff Has Sufficiently Pled Claims for Violations of the Florida Deceptive and Unfair Trade
        Practices Act. ...................................................................................................................................... 10

        A.      No Heightened Pleading Requirements Apply. ................................................................. 10

        B.      Plaintiff's Amended Complaint States a Claim Under FDUTPA..................................... 12

III.    Plaintiff Has Sufficiently Pled Claims for Unjust Enrichment. ..................................................... 14

IV.     Plaintiff Has Sufficiently Pled Claims for Breach of Express Warranty and Breach of Implied
        Warranty. ............................................................................................................................................. 16

        A.      Plaintiff Satisfied Fla. Stat. § 672.607(3)(a)'s Notice Requirement. ................................ 17

        B.      Plaintiff Sufficiently Pled Breaches of Express and Implied Warranties. ....................... 19

CONCLUSION..................................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Barbuto v. Mia. Herald Media Co.*,
  2021 WL 4244870 (S.D. Fla. Sept. 17, 2021) .......................................................................... 17

*Barrakuda Ltd. v. Zazaby Jewels, Inc.*,
  2020 WL 7493097 (S.D. Fla. Sept. 24, 2020) .......................................................................... 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................... 6

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) .................................................................................................. 10

*Carter v. Ford Motor Co.*,
  2021 WL 1165248 (S.D. Fla. Mar. 26, 2021) .......................................................................... 12

*City of Coconut Creek v. City of Deerfield Beach*,
  840 So. 2d 389 (Fla. 4th DCA 2003) ....................................................................................... 18

*Coleman v. Burger King Corp.*,
  2023 WL 5507730 (S.D. Fla. Aug. 25, 2023) ............................................................... 7, 8, 9, 10

*Felice v. Invicta Watch Co. of Am., Inc.*,
  2017 WL 3336715 (S.D. Fla. Aug. 4, 2017) ...................................................................... 14, 19

*Fineman v. Ferragamo USA Inc.*,
  672 F. Supp. 3d 1302 .............................................................................................................. 18

*Garcia v. Clarins USA, Inc.*,
  2014 WL 11997812 (S.D. Fla. Sept. 5, 2014) .................................................................... 14, 15

*Gavron v. Weather Shield Mfg., Inc.*,
  819 F. Supp. 2d 1297 (S.D. Fla. 2011) .................................................................................... 13

*Gilead Scis., Inc. v. AJC Med. Grp., Inc.*,
  2021 WL 8534243 (S.D. Fla. Nov. 29, 2021) .................................................................... 15, 16

*Guerrero v. Target Corp.*,
  889 F. Supp. 2d 1348 (S.D. Fla. 2012) .............................................................................. 11, 16

*Harris v. Nordyne, LLC*,
  2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) ........................................................................ 11

*Hosp. Corp. of Am. v. Lindberg*,
  571 So.2d 446 (Fla. 1990) ....................................................................................................... 18

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*,
  955 F. Supp. 2d 1311 (S.D. Fla. 2013)......................................................................... 15

*In re Monat Hair Care Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 5423457 (S.D. Fla. Oct. 23, 2019) .............................................. 12, 15, 16

*In re Servico, Inc.*,
  144 B.R. 557 (Bankr. S.D. Fla. 1992) ........................................................................ 12

*In re Takata Airbag Prods. Liab. Litig.*,
  462 F. Supp. 3d 1304 (S.D. Fla. 2020)......................................................................... 7

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  2022 WL 16729170 (11th Cir. Nov. 7, 2022)......................................................... 6, 7, 8

*Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*,
  800 F.2d 1577 (11th Cir. 1986) ..................................................................................... 5

*Jackson v. Wal-Mart Stores, Inc.*,
  753 Fed. App'x 866 (11th Cir. 2018)............................................................................ 6

*Kukorinis v. Walmart, Inc.*,
  2020 WL 13388297 (S.D. Fla. June 1, 2020) ............................................................ 14

*Langan v. Johnson & Johnson Consumer Cos.*,
  897 F.3d 88 (2d Cir. 2018) ........................................................................................... 8

*Licul v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) .............................................................. 15

*Maharaj v. Jaafar*,
  2020 WL 6870902 (S.D. Fla. May 21, 2020) ............................................................ 12

*Martin v. SmithKline Beecham Corp.*,
  2006 WL 8433438 (S.D. Fla. Aug. 15, 2006)............................................................ 18

*Mazile v. Larkin Univ. Corp.*,
  2024 WL 3495320 (S.D. Fla. July 22, 2024) ........................................................... 5, 8

*MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*,
  40 F.4th 1295 (11th Cir. 2022)................................................................................. 5, 14

*Nuwer v. FCA US LLC*,
  552 F. Supp. 3d 1344 (S.D. Fla. 2021)....................................................................... 19

*PBR Sales LLC v. Pezco Intl., LLC*,
  2022 WL 956718 (S.D. Fla. Mar. 1, 2022) ................................................................ 18

*Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ........................................................................ 7

*Ramirez v. Martinez*,
  2009 WL 199786 (S.D. Fla. Jan. 23, 2009) ...................................................... 17

*Reilly v. Amy's Kitchen, Inc.*,
  2013 WL 9638985 (S.D. Fla. Dec. 9, 2013) ..................................................... 15

*Rife v. Newell Brands, Inc.*,
  632 F. Supp. 3d 1276 (S.D. Fla. 2022) ............................................................. 16

*Sanchez-Knutson v. Ford Motor Co.*,
  52 F. Supp. 3d 1223 (S.D. Fla. 2014) ............................................................... 11

*Thompson v. Procter & Gamble Co.*,
  2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) .................................................... 13

*Thompson Ventures, Inc. v. Brunswick Corp.*,
  2019 WL 341226  (S.D. Fla. Jan. 28, 2019) ..................................................... 18

*Toback v. GNC Holdings, Inc.*,
  2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ................................................... 11

*Tobinick v. Novella*,
  2015 WL 1191267 (S.D. Fla. Mar. 16, 2015) ................................................... 19

*U.S. Bank Nat'l Ass'n v. Capparelli*,
  2014 WL 2807648 (S.D. Fla. June 20, 2014) ................................................... 12

*Universal Prop. & Cas. Ins. Co. v. Toshiba Am. Info. Sys., Inc.*,
  2015 WL 5829838 (M.D. Fla. Sept. 30, 2015) ................................................. 16

**Statutes**

Fla. Stat. § 163.3215 .......................................................................................... 18

Fla. Stat. § 95.11(2)(b) ....................................................................................... 18

Fla. Stat. § 672.607(3)(a) ........................................................................ 17, 18, 19, 20

**Rules**

Fed. R. Civ. P. 8 ................................................................................................. 15

Fed. R. Civ. P. 9 .................................................................................... 10, 11, 12

Fed. R. Civ. P. 12 ...................................................................................... 5, 6, 7

iv

Fed. R. Civ. P. 15 ................................................................................................................. 20

Fed. R. Civ. P. 23 ........................................................................................................ 7, 8, 10

Plaintiff Gregory Matus, through counsel, individually and on behalf of the class of persons similarly situated, hereby responds in opposition to the motion to dismiss Plaintiff's Amended Class Action Complaint ("Amended Complaint" or "Compl.") (Dkt. 18) filed by Defendant Sport Squad, Inc., d/b/a JOOLA ("Motion to Dismiss" or "Mot.") (Dkt. 28).

## **INTRODUCTION**

Plaintiff and other class members purchased pickleball paddles (the "Subject Paddles") from Defendant Sport Squad, Inc., d/b/a JOOLA ("JOOLA") and other authorized sellers that Defendant represented to the public were USA Pickleball ("USAP") Approved.  As it turns out, the Subject Paddles were never approved by USAP, despite statements made by JOOLA and physical markings on the Subject Paddles that so stated.

As the Amended Complaint alleges, the Subject Paddles were never approved by USAP, despite JOOLA's misrepresentations, because JOOLA knowingly submitted to USAP entirely different paddles for approval.  The paddles JOOLA submitted to USAP and sold to the public may bear the same name, but they are not the same paddles.  The paddles JOOLA submitted to USAP for approval were approved.  The Subject Paddles JOOLA manufactured, marketed, and sold to the public representing them as USAP Approved, were not.

JOOLA has publicly claimed that this deceit was caused by an "administrative error."  But JOOLA clearly wanted to push the limits of its paddle design to manufacture and sell paddles at a price of nearly $300 each that would provide players with a leg up.  JOOLA's marketing described the Subject Paddles as containing "revolutionary technology," engineered to create a "catapult effect" and deliver "extreme power and pin-point control at the net."

JOOLA's deceit began to unravel after, in response to player complaints, USAP conducted a "teardown" of the Subject Paddles and found they contained features prohibited by USAP's rules.

Though USAP informed JOOLA of this, JOOLA proceeded with a public launch of the Subject Paddles, falsely representing the Subject Paddles as USAP Approved and therefore compliant with USAP standards. JOOLA knew or should have known at the time it did so that the Subject Paddles were not the same paddles it had submitted to USAP for approval and that the Subject Paddles violated USAP's specifications.

Approximately a month later, after JOOLA informed USAP of its "error" and USAP had eliminated the Subject Paddles from the Approved List, JOOLA continued to lie to customers, including by issuing at least two false statements assuring the public that it was confident the Subject Paddles were "compliant with USAP standards." For months, JOOLA sold the Subject Paddles with marks on the Paddles themselves that falsely represented the Subject Paddles were USAP Approved when they were not.

JOOLA states that it "self-reported" the "administrative error." Mot. at 3. But it is telling that JOOLA only acknowledged its error *after* USAP's inquiries, when concealing its efforts would have been impossible. After USAP's investigation began, JOOLA had no choice but to admit to consumers and USAP alike that the Subject Paddles were different from the approved paddles. At bottom, this case is about JOOLA's attempts to deceive the USAP community by submitting a set of paddles for approval but then actively selling to the public another set, the Subject Paddles, knowing the whole time that the two sets were different from one another.

Defendant's primary factual argument boils down to its claim that Defendant did not make any misrepresentations to Plaintiff because the Subject Paddles were on the USAP Approved list when they were sold to him. This argument distorts the facts and Plaintiff's Amended Complaint, which clearly alleges the Subject Paddles Defendant sold to customers were never USAP Approved. Defendant also contends that JOOLA never represented the Subject Paddles would

2

remain on the USAP Approved list.  This is not Plaintiff's allegation, nor would it make sense for it to be, because the Subject Paddles were never approved.  As described below, Defendant's legal arguments fare no better.  For the below stated reasons, Plaintiff has sufficiently pled each of its claims and Defendant's Motion to Dismiss should be denied.

<u>**STATEMENT OF THE FACTS**</u>

Plaintiff and class members in this action have suffered economic damages because Defendant misrepresented and failed to disclose information to customers regarding USAP's certification of the Subject Paddles.

USAP is the non-profit governing body responsible for the official rules of pickleball. Compl. ¶ 22.  To ensure a safe and level playing field on the pickleball court, USAP has detailed equipment specifications that manufacturers of pickleball equipment must meet to obtain USAP's approval for play.  *Id.* ¶ 24.  For paddles, USAP's specifications require that "[t]he paddle shall be made of rigid, non-compressible material" and prohibit "[s]prings or spring-like material, flexible membranes or any compressible material that creates a trampoline effect."  *Id.*

JOOLA submitted two base prototype paddles to USAP for testing and approval on or around September 1, 2023.  *Id.* ¶ 25.  In its submission, JOOLA falsely represented that these paddles would be identical to the paddles ultimately offered and sold to customers.  *Id.*  On or around November 3 and 6, 2023, JOOLA submitted nine additional paddles to USAP for "similarity" testing.  *Id.* ¶ 26.  Defendant represented to USAP that these paddles were identical to the prototype paddles submitted in September and that they did not contain "any prohibited surface features or mechanical features."  *Id.*  Based on these false representations, USAP approved the paddles for sanctioned play.  *Id.* ¶ 27.

In January 2024, JOOLA began providing the Subject Paddles to professionals who won numerous tournaments with them.  *Id.* ¶ 29.  JOOLA represented that the Subject Paddles had USAP's approval.  *Id.* ¶ 28.  Following player concerns, USAP conducted a teardown of the paddles and found that the extent of foam around the rim violated its prohibition on "[s]prings or spring-like material, flexible membranes or any compressible material that creates a trampoline effect."  *Id.* ¶ 31.  Accordingly, on April 11, 2024, USAP informed JOOLA that it had found that "the foam insert along the rim [of the paddles] . . . created an illegal 'spring-like' effect that made the exit velocity of batted balls 'too fast.'"  *Id.* ¶ 32.

Despite knowing that the Subject Paddles violated USAP's specifications, Defendant put profits over customers and proceeded with its public launch of the Subject Paddles just five days later, on April 16, 2024.  *Id.* ¶ 34.  Advertisements for the Subject Paddles and the Subject Paddles themselves all represented that the Subject Paddles were "USA Pickleball Approved" for tournament use, even though JOOLA knew of non-public facts that either led or should have led it to believe that the Subject Paddles were not USAP Approved and did not comply with USAP's standards.  *Id.*  These facts were not disclosed to the public.

Paddles need to be USAP Approved for players to use them in USAP sanctioned and other tournaments.  It was therefore imperative to JOOLA that the Subject Paddles be USAP Approved. *Id.* ¶ 38.  Accordingly, knowing that USAP had previously conducted its teardown of the Subject Paddles and found violations that were not present in the paddles Defendant had previously submitted for approval in September and November 2023, JOOLA sought to cover its tracks.

To that end, on May 14 and 15, 2024, JOOLA informed USAP that the paddles it had submitted in November 2023 for similarity testing were not the paddles it had intended to submit and claimed that they purportedly contained a "manufacturing variance."  *Id.* ¶ 40.  Realizing that

the Subject Paddles had never actually been tested and approved, but that it had approved a different paddle prototype, on May 16, 2024, USAP promptly eliminated the Subject Paddles from the "Approved Pickleball Paddles" list.  *Id.* ¶ 41.

For the first time, JOOLA sought USAP's approval of the Subject Paddles, which it had already sold, and continued to sell, on the market as USAP Approved.  During testing, JOOLA falsely assured customers that the Subject Paddles "are materially the same as the models approved by USAP in the September 2023 paddle submission process" and "are fully compliant with USAP's standards."  *Id.* ¶ 44.  JOOLA knew this was not true because USAP had previously informed JOOLA in April that the Subject Paddles violated its regulations.  *Id.* ¶¶ 32, 40.

Despite Defendant's false statements to USAP and the public, the Subject Paddles were, as JOOLA already knew, not "structurally and functionally" identical to the prototype paddles submitted in September and November 2023, and contained impermissible materials and design structure.  *Id.* ¶ 47.  Accordingly, USAP refused to approve them and to date they remain off the USAP Approved list.  *Id.*  This renders their value completely worthless to consumers.

## LEGAL STANDARD

The standard on a Rule 12(b)(6) motion is not whether Plaintiff will prevail but whether the allegations are sufficient to allow Plaintiff to conduct discovery to prove their allegations.  *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579–80 (11th Cir. 1986); *Mazile v. Larkin Univ. Corp.*, 2024 WL 3495320, at *6 (S.D. Fla. July 22, 2024) (Leibowitz, J.).

In deciding a motion to dismiss, the Court is thus required to review the Amended Complaint in the light most favorable to Plaintiff and must accept Plaintiff's allegations and reasonable inferences therefrom as true.  *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1301–02 (11th Cir. 2022).  When allegations are capable of more than one

inference, the Court must adopt the plausible inference that supports a valid claim for Plaintiff. *Jackson v. Wal-Mart Stores, Inc.*, 753 F. App'x 866, 869 (11th Cir. 2018).

The Court should only grant a Rule 12(b)(6) motion if it appears beyond a reasonable doubt that Plaintiff could not provide any set of facts in support of their claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). Thus, Defendant's Motion to Dismiss merely tests the legal sufficiency of Plaintiff's Amended Complaint, requires the Court to construe the Complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of Plaintiff. *See Twombly*, 550 U.S. at 556–57.

## <u>MEMORANDUM OF LAW</u>

I.   **Plaintiff Has Sufficiently Pled His Allegations on Behalf of the Proposed Class.**

Defendant first argues that the Court "should dismiss Plaintiff's claims arising from non-Florida law" because Plaintiff does not have standing. Mot. at 7. Defendant also alleges that, even if Plaintiff did have standing, he fails to state such claims in this case. *Id.* at 9. Defendant's arguments are premature, lack merit, and ignore controlling precedent.

A.   **Plaintiff Has Standing to, and May Represent, Class Members in Other States with Claims Subject to Different State Laws.**

Defendant's standing argument fails under the Eleventh Circuit's decision in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170, at *8 (11th Cir. Nov. 7, 2022), which the Motion to Dismiss inexplicably does not mention or address. In *In re Zantac*, plaintiff appealed the district court's dismissal of its claims on behalf of class members arising under the laws of states in which no plaintiff purchased defendants' products, based on Article III standing. *Id.* at *2. In other words, plaintiff appealed the very argument Defendant makes here. The Eleventh Circuit reversed the district court's decision and explained that "whether [plaintiff] itself has

6

causes of action under the dozens of state statutes it invokes [] is not a standing question at all."

*Id.* at *5. The Eleventh Circuit therefore held:

> Because [plaintiff] has allegedly been injured by some of the defendants and those injuries are redressable by a favorable decision, it has Article III standing to pursue some of its claims. Its ability (or inability) to sue under the laws of states where it never reimbursed purchases of ranitidine by unnamed class members does not implicate Article III standing, and the district court's conclusion to the contrary was mistaken.

 *Id.* at *8.

Defendant's Motion to Dismiss does not cite this controlling decision at all and is foreclosed by its holding. *See also Coleman v. Burger King Corp.*, 2023 WL 5507730, at *4 (S.D. Fla. Aug. 25, 2023) ("the authority of a named plaintiff to represent the interests of absent class members is better analyzed through the prism of Rules 12 and 23—and *not* as a question of standing").

The case law cited on this issue in Defendant's Motion to Dismiss is unpersuasive. Most of the cases cited are pre-*In re Zantac*. Moreover, much of Defendant's discussion of these cases, such as *Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000), misstates even those holdings. Defendant relies on *Prado*, for example, as the foundation for its standing argument, but the Eleventh Circuit in *In re Zantac* found, to the contrary, that "[n]othing in *Prado* suggests an Article III limitation on a class representative's ability to represent unnamed class members based on the laws of states where their similar injuries took place." *In re Zantac*, 2022 WL 16729170, at *6. *Prado* also emphasized the "fluid nature of class certifications" and noted that "extensive interlocutory review of the standing objections seem[ed] particularly inappropriate . . . [given] that the factual record is not fully developed." *Prado*, 221 F.3d at 1278. Defendant also cites to *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1335–36 (S.D. Fla. 2020) for a position the court later reconsidered and reversed. Partial Order Grant Pls.' Mot. for Recons., No. 1:15-md-02599-FAM

(S.D. Fla. Dec. 21, 2022), ECF No. 4504 (granting motion to reconsider its prior ruling prohibiting plaintiffs from representing consumers with purchases in different states than the named plaintiffs pursuant to *In re Zantac*).

The Eleventh Circuit in *In re Zantac* also clearly held that a plaintiff may bring claims on behalf of unnamed class members whose injuries occurred in other states "so long as the alleged injuries and interests are substantially the same." *In re Zantac*, 2022 WL 16729170, at *6. Whether a plaintiff has done so is decided at the class certification stage. *Id.* As the Eleventh Circuit explained, "[f]or class representation purposes, the claims that the plaintiffs made on behalf of class members [in other states] need not be stricken or disregarded as those claims may be considered when determining the appropriateness of class certification under Rule 23." *Id.* (cleaned up); *see also Coleman*, 2023 WL 5507730, at *4 ("At this stage, remember, the Plaintiffs have brought only a putative (which is to say, an aspirational) class action. As things stand today, therefore, they represent only their own claims and are proceeding for redress only as to their own injuries. One day, we'll allow them to seek certification of a broader class of interests. And, when they request that certification, we'll have to decide whether they can assert the claims of absent class members from other states. But that day is not today.").

Multiple other circuits are in accord with the Eleventh Circuit. In *Morrison v. YTB Int'l, Inc.*, for example, the Seventh Circuit held that whether class members' claims fall under another state's laws is a Rule 23 matter. 649 F.3d 533, 536 (7th Cir. 2011) (holding that "this application of choice-of-law principles has nothing to do with standing, though it may affect whether a class should be certified); *see also Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93, 96 (2d Cir. 2018) ("as long as the named plaintiffs ha[d] standing to sue the named defendants, any

concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(3)(b).").

    **B.**    **Plaintiff May Also Represent Class Members Whose Consumer Protection Claims are Based on Violations of Non-Florida Consumer Protection Statutes.**

Defendant also argues that Plaintiff's Count IV consumer protection claims fail because Plaintiff has not identified the elements of each non-Florida state consumer protection statute asserted in the Amended Complaint. Mot. at 9. According to Defendant, Plaintiff was required to bring a separate count for each state consumer protection statute. *Id.* In support of this position, Defendant cites *Coleman*, but Defendant misunderstands that case's holding.

*Coleman* specifically addressed state consumer-protection statutory claims. As the Court in *Coleman* explained, Plaintiff cannot assert separate counts for each state consumer protection claim unless Plaintiff has a named representative from every state. *Coleman*, 2023 WL 5507730, at *3. This is because, as articulated above, at this stage, Plaintiff may only assert his own claims. *Id.* The Court in *Coleman*, however, also explained that, at the class certification stage, plaintiffs may assert "materially identical consumer-protection claims on behalf of class members from *other* states." *Id. Coleman* confirmed that there is no distinction between common law and state statutory claims, and that, including for statutory consumer-protection claims, a plaintiff's authority to assert claims on behalf of unnamed class members does not raise standing questions that should be decided at the pleading stage. *Id.* at 5.

Plaintiff's Amended Complaint followed the specific pleading instructions that the Court provided in *Coleman*. *Coleman* instructed:

> [Plaintiffs] must file a second amended complaint that includes consumer-protection counts *only* for those states in which the named plaintiffs purchased their Burger King products. They may (and probably should) assert in some of those counts that, at some future date and time, they will be seeking court approval (what we call "certification") to assert materially identical consumer-protection claims on

behalf of class members from *other* states, and they can even list in the named Plaintiffs' consumer-protection counts, the states whose consumer-protection statutes (they believe) are similar enough to justify certification. So, as an example, if the Florida Plaintiff believes that FDUTPA is materially identical to Georgia's consumer-protection statute, then he may assert a FDUTPA claim in which he may put us all notice of his intention, at some future date, to represent the Georgia claims of Georgia class members based on *their* purchases of Burger King products in Georgia.

*Id.* at 3.

This is exactly what Plaintiff did. Plaintiff pled his Florida claims and stated that, "[a]t the appropriate time in accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff intends to seek certification to represent consumers who purchased Subject Paddles in those states whose consumer protection law are materially the same as Florida's," and identified those states and statutes. Compl. ¶ 59 & n. 12. Accordingly, Plaintiff has sufficiently pled his consumer protection law claims.

## II. Plaintiff Has Sufficiently Pled Claims for Violations of the Florida Deceptive and Unfair Trade Practices Act.

Plaintiff has stated a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016).

### A. No Heightened Pleading Requirements Apply.

As a preliminary matter, the heightened pleading requirements set forth by Rule 9(b) do not apply to Plaintiff's FDUTPA case. Defendant acknowledges that there is a split of authority concerning the level of specificity that a plaintiff must allege for purposes of a FDUTPA cause of action based on deception. Mot. at 12. This distinction is important, because there is certainly no "heightened pleading" requirement for FDUTPA claims based on "unfair" conduct, and Florida courts "have regarded the concept [of unfairness] as extremely broad." *Siever v. BWGaskets, Inc.*,

669 F. Supp. 2d 1286, 1293 n. 2 (M.D. Fla. 2009); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1263 (N.D. Fla. 2012) (heightened pleading requirement does not apply if FDUTPA is claim based on "unfair of unlawful conduct").

As to Plaintiff's allegations concerning Defendant's deceptive acts, this Court should "join[] several decisions in holding that the requirements of Rule 9(b) categorically do not apply to claims under FDUTPA." *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014); *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1239 (S.D. Fla. 2014) ("While the Court acknowledges that courts within this district have reached various conclusions about the application of Rule 9(b) to FDUTPA claims, this Court is persuaded that Rule 9(b) does not apply to FDUTPA claims."); *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) (requirements of Rule 9(b) inapplicable under FDUTPA). As Defendant's own authority acknowledges, "the heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012).

Defendant makes much of the fact that Plaintiff alleges Defendant made multiple misrepresentations. Mot. at 12. But even if Plaintiff's claims sound in fraud, this Court is not obligated to apply a heightened pleading standard. Courts have explained that "even where a FDUTPA claim includes allegations which implicate fraudulent conduct, it need not meet the heightened pleading requirements of Rule 9(b)." *Harris*, 2014 WL 12516076, at *4. In fact, there are strong policy reasons not to do so. This is because "requiring plaintiffs to plead FDUT[P]A claims with particularity would not advance the primary goals of Rule 9(b)," as "FDUTPA's elements are more particularized than those of common law fraud." *Id.* at *5. Likewise, as a matter of policy, "FDUTPA is a consumer and business protection statute that is remedial in

11

nature," and courts have found that FDUTPA should be "construe[d] . . . liberally in favor of consumers."  *U.S. Bank Nat'l Ass'n v. Capparelli*, 2014 WL 2807648, at *5 (S.D. Fla. June 20, 2014).

### B.   Plaintiff's Amended Complaint States a Claim Under FDUTPA.

Even if 9(b) applies to Plaintiff's FDUTPA claims, the Amended Complaint's allegations meet this pleading standard.  Throughout the Amended Complaint, Plaintiff alleged sufficiently detailed notice of the nature of Defendant's deceptive acts, when and where they occurred, and how those practices harmed Plaintiffs.  "This is all that Rule 9(b) requires."  *In re Monat Hair Care Prods. Mktg., Sales Pracs., & Prods. Liab. Litig*., 2019 WL 5423457, at *6 (S.D. Fla. Oct. 23, 2019) (applying 9(b) and denying dismissal of FDUTPA claim); *see also Carter v. Ford Motor Co*., 2021 WL 1165248, at *17 (S.D. Fla. Mar. 26, 2021) ("whether under Rule 8 or 9(b), the Plaintiffs' FDUTPA claim survives").  And, as to Defendant's motive or intent, even under the elevated 9(b) pleading standard, these can be pled generally.  *Maharaj v. Jaafar*, 2020 WL 6870902, at *1 (S.D. Fla. May 21, 2020) ("Rule 9(b)(6) provides that . . . '[m]alice, intent, knowledge, and other conditions of a person's mind shall be averred generally.'"); *Crespo v. Midland Credit Mgmt., Inc.*, 2015 WL 13779200, at *3 (S.D. Fla. Sept. 2, 2015) (denying motion to dismiss and noting that "[t]o the extent that Defendant challenges the likelihood of proving that the [at issue act] was done intentionally and fraudulently, these arguments are better addressed at the summary judgment stage—after discovery"); *In re Servico, Inc.*, 144 B.R. 557, 561 (Bankr. S.D. Fla. 1992) ("[Rule] 9(b) requires only that intent be averred generally.")

Defendant's Motion challenges only whether Plaintiff has sufficiently alleged a deceptive act.[1]  Mot. at 12–13.  Under FDUTPA, "deceptive acts" and acts that are "likely to mislead [a]

---

[1] Defendants claim that "Plaintiff's FDUPTA claim is deficient because Plaintiff does not

consumer acting reasonably in the circumstances." *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011). "Ordinarily, the question of whether a business practice— such as a statement made on a product's packaging—is deceptive, is a question of fact not appropriately resolved on a motion to dismiss." *Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018). Defendant alleges that Plaintiff did not sufficiently plead a deceptive act because Plaintiff did not plead that the Subject Paddles were not USAP Approved at the time Plaintiff purchased them, Defendant never warranted the Subject Paddles would remain on the USAP Approved list, and Defendant did not know that the Subject Paddles would later be decertified. Mot. at 13–14.

Defendant's factual arguments distort Plaintiff's Amended Complaint, which clearly alleges, among other deceptive acts, that the Subject Paddles were never USAP Approved because Defendant had submitted a different paddle to USAP for approval. Plaintiff's pleading alleges, for example, that:

- Defendant submitted different paddles to USAP for testing and approval in September and November 2023 than the Subject Paddles it marketed and sold to consumers. Compl. ¶¶ 6, 7, 10, 15, 28, 40, 53. When Defendant submitted its test paddles to USAP in September 2023, Defendant affirmed that its test paddles would be identical to the paddles ultimately offered and sold to customers. *Id*. ¶ 25. Defendant made similar false representations when it submitted test paddles to USAP in November 2023. *Id.* ¶ 26.

_____

adequately plead that Joola committed a deceptive act." Mot. at 12–13. Defendant ignores the law: a claim under FDUTPA may be based on an act or practice that is either "unfair" or "deceptive." *See, e.g.*, *Hill*, 899 F. Supp. 2d at 1263 (noting two categories of FDUPTA claims: "(1) those claims based on fraudulent conduct and (2) those claims based on unfair or unlawful conduct"). Plaintiff's FDUTPA claims are based on both theories, *i.e.*, Defendant's conduct was both "unfair" and "deceptive" conduct by Defendants. Compl. ¶ 117. Even if Defendant's acts were not sufficiently deceptive (which they were), a plaintiff still states a claim if the conduct of the Defendant was unfair. *Id.* ("Generally, the standard for proving the existence of a deceptive act is different than the standard for proving an unfair practice…. courts have found the existence of an unfair practice where such practice offends established public policy and where such practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.") (internal citations and modifications omitted).

- Despite that the Subject Paddles were never approved by USAP (*Id.* ¶¶ 6, 7, 10, 12, 28, 40, 47, 48, 52, 53), JOOLA marketed and sold the Subject Paddles falsely representing that they were USAP Approved (Compl. ¶¶ 12, 28, 34, 55). This is despite that, as early as April 10, 2024, JOOLA knew the Subject Paddles did not comply with USAP's specifications. *Id.* ¶¶ 8, 31, 32, 33, 34, 48.

- Defendant also told the public that it was confident its paddles were compliant with USAP standards, for example in its May 14, 2024 and May 24, 2024 statements (*id.* ¶¶ 44, 45), despite that USAP had previously informed JOOLA that the Subject Paddles were not. *Id.* ¶¶ 8, 31, 32.

- Defendant continued to falsely market and sell the Subject Paddles as USAP Approved even after USAP eliminated the Subject Paddles from the USAP Approved list. *Id.* ¶¶ 12, 51.

These facts are sufficient to plead "deceptive acts" under FDUTPA. Defendant's strained interpretation of the facts to the contrary only underscores that whether Defendant's conduct constituted a deceptive act is a question of fact for the jury. *See, e.g.*, *Felice v. Invicta Watch Co. of Am., Inc.*, 2017 WL 3336715, at *4 (S.D. Fla. Aug. 4, 2017) ("Because Defendant's arguments go to the merits of Plaintiff's FDUTPA claim, rather than the sufficiency of pleading, its arguments do not warrant dismissal."); *Kukorinis v. Walmart, Inc.*, 2020 WL 13388297, at *5–6 (S.D. Fla. June 1, 2020) (finding plaintiff sufficiently alleged deceptive practices under the heightened pleading standard and noting that where there was no agreement between the parties as to whether defendant's practices were deceptive or unfair, then "[t]hat issue is best resolved by a fact-finder"). At this stage, the Court must accept Plaintiff's allegations and any reasonable inferences therefrom as true. *MSP Recovery Claims*, 40 F.4th at 1301–02.

## III.    Plaintiff Has Sufficiently Pled Claims for Unjust Enrichment.

Plaintiff has also stated a claim for unjust enrichment. To state a claim for unjust enrichment under Florida law, a plaintiff must plead that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying

the value thereof." *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 5, 2014); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013).

Defendant does not dispute that Plaintiff adequately pled his unjust enrichment claim. Mot. at 14. Instead, Defendant argues that, as a matter of law, Plaintiff's unjust enrichment claim must be dismissed because its factual basis is "duplicative" of Plaintiff's FDUTPA claim. Mot. at 14–15. But Defendant misstates the law. At the pleading stage, a plaintiff may plead alternative types of relief. Fed. R. Civ. P. 8(a)(3). Courts in Florida have also frequently permitted unjust enrichment claims to move forward past the motion to dismiss stage even if they rest on similar proof as a FDUTPA claim, because a plaintiff "may plead unjust enrichment claims in the alternative to legal causes of action, even if they rely on identical factual predicates." *Gilead Scis., Inc. v. AJC Med. Grp., Inc.*, 2021 WL 8534243, at *22 (S.D. Fla. Nov. 29, 2021); *In re Monat Hair Care Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 5423457, at *5 ("As a result, Plaintiffs may allege, in the alternative, a claim for unjust enrichment even though their FDUTPA claim might provide an adequate legal remedy."); *Heuer v. Nissan N. Am., Inc.*, 2017 WL 3475063, at *6 (S.D. Fla. Aug. 11, 2017) (rejecting defendant's argument that plaintiff's Nissan "unjust enrichment claim is duplicative of the FDUTPA claim" because plaintiff "is entitled to bring all alternative theories available under Florida law"); *Reilly v. Amy's Kitchen, Inc.*, 2013 WL 9638985, at *7 (S.D. Fla. Dec. 9, 2013) (rejecting defendant's arguments that plaintiff's "unjust enrichment claim fails because it is based on the same conduct as her FDUTPA claim" and finding that "Eleventh Circuit precedent dictates that her unjust enrichment claim move forward").

The cases that Defendant cites are not persuasive. Mot. at 15–16. More recent decisions in this district court have departed from the rulings in *Licul* and *Guerreo*. *Licul v. Volkswagen*

15

*Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013); *Guerrero*, 889 F. Supp. 2d at 1348. For example, in *Gilead Sciences*, the court explicitly noted that "more recent decisions depart from *Licul*, as does the Court here." 2021 WL 8534243, at *22 n. 10 (distinguishing *Licul and Guerreo*). Likewise, in *In re Monat*, the court explained that *Guerrero*, despite standing for the "proposition that unjust enrichment claims must be dismissed where the claim is based on the same wrongful conduct as a legal claim," "conflict[ed] with other cases in the district." 2019 WL 5423457, at *5 n. 10. Plaintiff may therefore bring his unjust enrichment claim.[2]

## IV.  Plaintiff Has Sufficiently Pled Claims for Breach of Express Warranty and Breach of Implied Warranty.

Plaintiff has also sufficiently alleged his breach of express and breach of implied warranty claims.[3] "In order to properly plead a cause of action for breach of warranties under the Florida Uniform Commercial Code, a complaint should contain at least the following allegations: (1) facts in respect to the sale of the goods; (2) identification of the types of warranties created; (3) facts in respect to the creation of the particular warranty; (4) facts in respect to the breach of the warranty; (5) notice to seller of the breach; and (6) the injuries sustained by the buyer as a result of the breach of warranty." *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1298 (S.D. Fla. 2022) (cleaned up). The elements of an express and implied warranty claim are the same. *Universal Prop. & Cas. Ins. Co. v. Toshiba Am. Info. Sys., Inc.*, 2015 WL 5829838, at *3 (M.D. Fla. Sept. 30, 2015) ("Both the breach of express warranty claim and breach of implied warranty claim allege each of these six elements, and therefore assert *prima facie* breach of warranty claims under Florida law.").

---

[2] Importantly, FDUPTA and unjust enrichment have distinct elements that do not depend on the success of the other. *See* Section II (elements of FDUPTA claim; Section III (elements of unjust enrichment). Even if this Court finds that JOOLA's actions were not deceptive to warrant relief under FDUPTA, Plaintiff is still entitled to pursue his unjust enrichment claim.
[3] Defendant's Motion makes identical arguments as to why the Court should dismiss each of Plaintiff's breach of express warranty and breach of implied warranty claims. Plaintiff, therefore, addresses these claims and arguments together.

Defendant makes two arguments for why Plaintiff's breach of warranty claims should be dismissed.  Mot. at 16. First, Defendant claims that Plaintiff did not properly provide notice. Second, Defendant repeats his same factually flawed position that the Subject Paddles were USAP Approved, so Defendant could not have breached its warranties.  Neither argument is convincing.

## A.      Plaintiff Satisfied Fla. Stat. § 672.607(3)(a)'s Notice Requirement.

Plaintiff provided notice of breach of warranty in writing to JOOLA and its counsel on or about August 13, 2023, *before* the filing of the operative complaint.  Compl. ¶¶ 95, 112. Defendant's Motion acknowledges this.  Mot. at 17.  Defendant, nonetheless, takes issue with the timing of Plaintiff's notice.  *Id.*  According to Defendant, Plaintiff must have provided notice to Defendant prior to filing his original complaint or he may never bring his claims.  *Id.*

Defendant's position is inconsistent with the law, which permits a plaintiff to provide notice between filing an original and amended complaint.  *See, e.g.*, *Barrakuda Ltd. v. Zazaby Jewels, Inc.*, 2020 WL 7493097, at *7 (S.D. Fla. Sept. 24, 2020) (holding that the plaintiff did not provide notice under Fla. Stat. § 672.607(3)(a) and ordering plaintiff to "comply prior to filing an Amended Complaint").  Courts in this District and in Florida state court consistently, in a wide variety of contexts where pre-suit notice is required, permit a plaintiff to meet statutory notice requirements prior to filing an amended complaint, so long as it is provided within the statute of limitations.  *See, e.g.*, *PBR Sales LLC v. Pezco Int'l, LLC*, 2022 WL 956718, at *5 (S.D. Fla. Mar. 1, 2022) (in civil theft context, noting that courts have even moved away from requiring pre-suit demand as long as the claim was brought within the statute of limitations); *Barbuto v. Mia. Herald Media Co.*, 2021 WL 4244870, at *4 (S.D. Fla. Sept. 17, 2021) (in libel context where notice is required prior to filing suit, allowing plaintiff to comply with notice requirements and then file an amended complaint if there is sufficient time to comply within the statutory time period); *Ramirez*

*v. Martinez*, 2009 WL 199786, at *5 (S.D. Fla. Jan. 23, 2009) (same in Florida minimum wage law context); *Martin v. SmithKline Beecham Corp.*, 2006 WL 8433438, at *3 (S.D. Fla. Aug. 15, 2006) (same in medical malpractice context); *Hosp. Corp. of Am. v. Lindberg*, 571 So.2d 446, 447–49 (Fla. 1990) (Supreme Court of Florida holding, in the medical malpractice context, that if a complaint is filed before pre-suit notice is met, it is subject to dismissal with leave to amend to fulfill those requirements, as long as the statute of limitations has not run out); *City of Coconut Creek v. City of Deerfield Beach*, 840 So. 2d 389, 393 (Fla. 4th DCA 2003) (same in development plan context under Fla. Stat. § 163.3215).

Plaintiff purchased the Subject Paddles on April 17, 2024, and therefore provided notice to Defendant well within the statute of limitations for breach of warranty claims, which is five years. *Thompson Ventures, Inc. v. Brunswick Corp.*, 2019 WL 341226, at *3 (S.D. Fla. Jan. 28, 2019) ("Both breach of contract and breach of warranty claims are subject to a five year statute of limitations." (citing Fla. Stat. § 95.11(2)(b))).  Fla. Stat. § 672.607(3)(a) provides: "The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  The purpose of § 672.607(3)(a) is to "bring the relevant problems and complaints in some objectively reasonable manner to the attention of the seller." *Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1307 (internal citation omitted). Here, Plaintiff provided notice to Defendant within a reasonable time period, within the five-year statute of limitations for breach of warranty claims, and prior to filing his Amended Complaint on August 23, 2024.  Plaintiff has therefore complied with Fla. Stat. § 672.607(3)(a)'s notice requirement.[4]

---

[4] Where, as here, Plaintiff has already alleged notice and provided such notice prior to filing his Amended Complaint, the Court should hold that Plaintiff has complied with the notice requirement.  Should the Court disagree, however, Plaintiff requests permission to refile his

The cases upon which Defendants rely are easily distinguishable.  Mot. at 17–18.  First, in *Valiente v. Unilever United States, Inc*., the court expressly noted that despite the plaintiff's failure to allege "that she gave Defendant pre-suit notice of the breach," the warranty claims were dismissed *without prejudice* and provided the plaintiff leave to amend.  2022 WL 18587887, at *17, 24 (S.D. Fla. Dec. 8, 2022).  Nothing in *Valiente* indicates that the failure to provide pre-suit notice before the filing of a complaint could not be cured before the party files its' amended complaint.  And *Hernandez* does not address circumstances where a party provides notice to the defendant prior to filing an amended complaint.  *Hernandez v. HP Inc*., 2023 U.S. Dist. LEXIS 89914, at *10 (S.D. Fla. May 23, 2023).[5]

### B.    Plaintiff Sufficiently Pled Breaches of Express and Implied Warranties.

Defendant also contends that Plaintiff's breach of express and implied warranty claims fail to allege a warranty that Defendant breached.  Mot. at 18.  Defendant does not dispute that it warranted that the Subject Paddles were USAP Approved, nor does it argue Plaintiff failed to plead any other element of his breach of warranty claims aside from notice.  *Id.*

As described in Section IIb., Plaintiff alleged that the Subject Paddles were not USAP Approved when he purchased the Subject Paddles because Defendant submitted to USAP different

---

complaint.  *See, e.g.*, *Tobinick v. Novella*, 2015 WL 1191267, at *10 (S.D. Fla. Mar. 16, 2015) (in the libel context where pre-suit notice is required, adopting alternative approach and requiring plaintiff, so long as it was still within the statute of limitations, to comply with pre-suit notice requirement and then refile).

[5] Defendant's pre-suit notice argument also fails with respect to Plaintiff's breach of express warranty claim because Plaintiff has also sued JOOLA in its capacity as the manufacturer of the Subject Paddles.  Fla. Stat. § 672.607(3)(a) provides: "The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the *seller* of breach or be barred from any remedy." (emphasis added).  For this reason, although there is some division in the law, courts in the Southern District of Florida have held that plaintiff is not required to provide a manufacturer with pre-suit notice under Florida law.  *See, e.g.*, *Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1362 (S.D. Fla. 2021); *Felice v. Invicta Watch Co. of Am. Inc.*, 2017 WL 3336715, at *6 (S.D. Fla. Aug. 4, 2017).

paddles than it ultimately manufactured, sold, and warranted to Plaintiff were USAP Approved. Compl. ¶¶ 6, 7, 12, 28, 34, 48, 52, 53.  Defendant publicly admitted it submitted the wrong paddles to USAP. *Id*. ¶¶ 40, 41.  USAP therefore never approved the Subject Paddles despite Defendant's express and implied warranties that they were USAP Approved.  *Id*. ¶¶ 6, 7, 10, 12, 28, 40, 47, 48, 52, 53.  The first time JOOLA submitted the Subject Paddles to USAP for certification purposes was in May 2024, a month after Plaintiff's purchase.  *Id*. ¶¶ 19, 43.  At this time, the Subject Paddles failed to meet its specifications, and USAP did not approve them.  *Id*. ¶ 52.

Nor have the Subject Paddles ever conformed to USAP design and manufacturing specifications despite Defendant's USAP Approved warranty, which certified the Subject Paddles were in compliance with USAP's standards.  *Id*. ¶¶ 32, 47, 48.  Defendant's request to dismiss Plaintiff's breach of warranty claims should therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.  In the alternative, should the Court deem any of Plaintiff's claims inadequately pled, Plaintiff requests leave to file an Amended Complaint to cure any such deficiencies pursuant to Rule 15 of the Federal Rules of Civil Procedure, or, to the extent the Court determines Plaintiff has not met Fla. Stat. § 672.607(3)(a)'s notice requirement for its breach of implied and breach of express warranty claims, Plaintiff requests dismissal be granted with leave to refile.

20

Dated: September 20, 2024

Respectfully submitted,

By: */s/ Bradley Edwards*
Brittany N. Henderson
Bradley J. Edwards
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone : (954)-524-2820
Email: brad@cvlf.com
brittany@cvlf.com
ecf@cvlf.com

Sigrid McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
E-mail: smccawley@bsfllp.com

Tyler Ulrich
Boies Schiller Flexner LLP
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Email: tulrich@bsfllp.com

21