**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:24-CV-60954-LEIBOWITZ/AUGUSTIN-BIRCH**

**GREG MATUS,** *on behalf of himself*
*and all others similarly situated,*

>       **Plaintiff,**

**v.**

**SPORT SQUAD, INC. d/b/a JOOLA,**

>       **Defendant.**

_____/

**REPORT AND RECOMMENDATION ON MOTION FOR FINAL APPROVAL OF**
**CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS**

This cause comes before the Court on Plaintiff Greg Matus' Motion for Final Approval of

Class Settlement and Application for Attorneys' Fees and Costs.  DE 62.  The Honorable David S.

Leibowitz, United States District Judge, referred the Motion to the undersigned United States

Magistrate Judge for a report and recommendation.  DE 63.  The Court has carefully considered

the Motion and the record and is otherwise fully advised in the premises.  As set forth below, the

Court recommends that the Motion [DE 62] be **GRANTED**.  The Court recommends that the class

be certified for settlement purposes, that the settlement be approved, that an award of $790,000 for

class counsel's fees and costs be approved, and that a service award of $10,000 for each class

representative be approved.

## I.       Background

Plaintiff filed an Amended Class Action Complaint under diversity jurisdiction against

Defendant Sport Squad, Inc. doing business as JOOLA for unjust enrichment, breach of warranty,

and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  DE 18.  He

filed the claims on behalf of himself and nationwide and multi-state classes of consumers who purchased certain models of pickleball paddles between November 2023 and the present. *Id.* ¶¶ 58–59.  Plaintiff alleged that Defendant marketed the paddles with a warranty that the USA Pickleball Association, the national body governing the sport of pickleball, approved the paddles, when the USA Pickleball Association in fact did not approve the paddles.  *Id.* ¶¶ 1–2, 6–12. Defendant thereafter filed a Third-Party Complaint against the USA Pickleball Association for indemnification and contribution, alleging that the USA Pickleball Association did approve Defendant's pickleball paddles but later wrongfully revoked that approval.  DE 38.

Plaintiff, on behalf of himself and the classes, has reached a settlement with Defendant. DE 55-1 (Settlement Agreement and Release).  The settlement is on behalf of a class of persons residing within the United States who own and have in their possession certain models of pickleball paddles.  *Id.* § I.W., FF.  More specifically, the class is defined as:

> [A]ll persons residing within the United States who own and have in their possession a Gen 3 Paddle.  Persons who accepted JOOLA's prior offer to return their Gen 3 Paddle are not part of the Settlement Class; however, if a Gen 3 Paddle holder has more than one Gen 3 Paddle and did not already return all of their Gen 3 Paddles, such purchaser is still a member of the class as to the remainder of the Gen 3 Paddles that were not previously returned.  Excluded from the Settlement Class are Defendant and its officers, directors, affiliates, legal representatives, employees, assigns and successors, and Defendant's Authorized Retailers.

*Id.* § I.FF.  Class members who provide proof of original purchase of a paddle from an authorized retailer will receive a $300 refund.  *Id.* § IV.A.  Class members who do not provide such proof of purchase will receive a gift code for $150 to use on the website www.joola.com.  *Id.* § IV.B.

The settlement resolves this case and a similar class action that is pending in the Central District of California, *Tomberlin v. Sport Squad, Inc.*, 5:24-cv-01158-MWC-SP (C.D. Cal.). *Id.* at 2.  Further, the parties have agreed that, if their settlement is approved, Defendant's claims against the USA Pickleball Association should be dismissed without prejudice.  DE 62 at 4.  The

Court previously provisionally certified the class, preliminarily approved the settlement, appointed Plaintiff as the class representative, appointed class counsel, approved Kroll Settlement Administration LLC ("Kroll") as the settlement administrator, and approved the parties' notice plan.  DE 57; DE 58.

Thereafter, Kroll distributed notice of the settlement via mail, email, a website, a toll-free telephone number, social media, and a press release.  DE 62-1 at 2–4.  Kroll received more than 15,000 claims.  *Id.* at 5.  Kroll received a large number of claims toward the end of the notice period, conducted review and investigation of suspicious claims, determined that thousands of claims were fraudulent, and rejected the fraudulent claims.  *Id.* at 5–6.  Kroll is continuing to both review claims for fraud and attempt to cure deficient claims.  *Id.* at 6.  Kroll did not receive any objections to the settlement or exclusions from the settlement by the December 15, 2025 deadline for objections and exclusions.  *Id.*

Plaintiff then filed the instant Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs.  DE 62.  The Court held a final approval hearing on January 27, 2026.  During the hearing, the parties' counsel confirmed that there have been no objections to the settlement or exclusions from the settlement.  No one appeared at the hearing to voice an objection or exclusion, and no objections or exclusions have been filed in the record. Counsel stated that Kroll believes it has received approximately 5,300 non-fraudulent claims and that Kroll has approved 4,285 claimants.  Kroll continues to review and investigate claims.  The parties would prefer to begin distributing settlement proceeds to valid claimants while Kroll's review process is ongoing.

## II.      Class Certification

A class action must meet the requirements of Federal Rule of Civil Procedure 23(a) and (b). First, a class member may sue on behalf of all class members only if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the class representative are typical of the claims or defenses of the class, and the class representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).    These four prerequisites are known as numerosity, commonality, typicality, and adequacy of representation.  Second, the class action must satisfy one of the requirements under section (b), the third of which is that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.  Rule 23(a)

This class action meets the prerequisites under Rule 23(a).  As for numerosity, around 15,000 of the pickleball paddles at issue remain in consumers' possession, and so there could have been approximately 15,000 claimants.  Kroll has approved more than 4,000 claimants.  The class certainly is so numerous that joinder of all members is impracticable.  *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (concluding that a district court did not abuse its discretion in finding the numerosity requirement for class certification met where the plaintiffs identified at least 31 class members); *Cheney v. Cybergard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) ("Generally, less than twenty-one is inadequate, more than forty adequate." (quotation marks omitted)).

Commonality requires the presence of at least one issue affecting all or a significant number of the class members and is met where the allegations involve a common course of conduct by the defendant. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Here, whether Defendant misrepresented the approval of its pickleball paddles and thereby violated the law are issues that are common to all class members. The class meets the commonality requirement.

Typicality "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (quotation marks omitted). "The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (quotation marks omitted). Being one purchaser of the paddles at issue, Plaintiff's claims and injury are typical of all purchasers of the same paddles containing the same alleged defect. *See* DE 18 ¶ 19 (alleging that "Plaintiff purchased two of the Subject Paddles"). Plaintiff meets the typicality requirement.

Finally, the prerequisite of adequacy of representation examines whether there are any substantial conflicts of interest between the representative and the class and whether the representative will adequately prosecute the case. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Based on the settlement, the record, and the presentations during the January 27 hearing, Plaintiff and his counsel have adequately prosecuted this case and have adequately represented the class. Plaintiff and his counsel briefed opposition to a motion to dismiss and proceeded through discovery. They participated in a two-day mediation and negotiated a favorable settlement for the class. The Court has no reason to suspect that Plaintiff

has any conflict of interest with the other class members.  Plaintiff meets the requirement that he fairly and adequately protects the interests of the class.  Each of the four prerequisites under Rule 23(a) is met.

### B.  Rule 23(b)(3)

The requirement under Rule 23(b)(3) is also met because "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Williams*, 568 F.3d at 1357 (quotation marks omitted).  "[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."  *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893 (11th Cir. 2023) (quotation marks omitted) (explaining that individualized damages issues are unlikely to defeat predominance where damages can be computed according to a formula, statistical analysis, or other easy or essentially mechanical methods, but that individualized damages would predominate if computing them would be so complex, fact-specific, and difficult that the burden on the court system would be intolerable).

This case meets the predominance requirement.  All class members purchased the same or similar pickleball paddles with the same alleged deficiency.  Even if class members' damages may be different because members purchased paddles for different prices, individualized damages could be easily calculated.  Further, Plaintiff represents that the price of the pickleball paddles was relatively uniform across the country.  DE 62 at 22.  Based on this representation, the difference in class members' individualized damages would be minimal.

Further, a class action is a superior method to fairly and efficiently resolve the class members' claims. The pickleball paddles had a retail price of less than $300. Given the value of the products at issue, thousands of separate lawsuits by each affected consumer would be wholly inefficient. Having concluded that the requirements under Federal Rule of Civil Procedure 23(a) and (b)(3) are met, the Court recommends certification of the class for settlement purposes.

### III.   Settlement Approval

A court may approve a class action settlement only after a hearing and only upon finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To make that finding, the court must consider whether the class representative and class counsel have adequately represented the class, the settlement was negotiated at arm's length, the relief provided for the class is adequate, and the settlement treats class members equitably relative to each other. *Id.* In considering whether the relief provided for the class is adequate, the court evaluates the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorneys' fees, including timing of payment; and any agreement made in connection with the settlement. Fed. R. Civ. P. 23(e)(2)(C). The court should also consider the following *Bennett* factors: the likelihood of success at trial; the range of possible recovery; the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; the complexity, expense, and duration of litigation; the substance and amount of opposition to the settlement; and the stage of proceedings at which the settlement was achieved. *In re Equifax Inc. Consumer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

This settlement provides the claimants with a significant remedy and is an excellent result. The suggested retail price for the pickleball paddles was $279.95.  DE 62 at 15.  Class members who provide proof of original purchase will receive a $300 refund.  This sum more than covers the purchase price.  Class members who do not provide proof of original purchase will receive a gift code for $150.  Thus, even where members cannot show proof of purchase, they will receive a gift code valued at more than half of the purchase price.  The Court also notes that Plaintiff has not alleged that, functionally, there was anything wrong with the pickleball paddles.  The paddles could still be used to play pickleball.  The alleged deficiency was a marketing misrepresentation— a representation that the paddles were approved by the USA Pickleball Association, when arguably they were not.  Claimants may participate in the settlement whether or not they decided to purchase a pickleball paddle based on this alleged misrepresentation.

This settlement is fair, reasonable, and adequate.  As the Court has already discussed above, Plaintiff and his counsel have adequately prosecuted this case and have adequately represented the class.  They succeeded in negotiating a very favorable settlement for the class during a two-day mediation.  The parties conducted the mediation at arm's length, without collusion, and with the assistance of an experienced mediator.

The relief to the class members is adequate and treats the members equitably relative to one another.  As already stated, class members who can show proof of purchase will receive a refund of more than their purchase price, whereas class members who do not have proof of purchase will receive a gift code valued at over half of the purchase price.  The $300 refunds will be distributed electronically or by check, and the gift codes will be distributed electronically. Further evidencing the favorability of the settlement for the class members, there has not been a

single objection to the settlement or exclusion from the settlement. Other than the Settlement Agreement [DE 55-1], there were no agreements made in connection with the settlement.

The benefit of resolving this case and the *Tomberlin* action through this settlement far outweighs the alternative of continuing to litigate both cases. This case resolved after the parties had conducted discovery, such that they had material available to them to enable them to evaluate the strengths and weaknesses of their cases and come to an informed resolution. Success for the class members was far from a certainty, given Defendant's position that its pickleball paddles had been approved by the USA Pickleball Association. Even if class members ultimately succeeded at trial, their individual damages would likely be their cost of purchasing the pickleball paddles. They are already able to recoup that cost now through this settlement. Further, success at trial would come after a great dedication of time and resources to briefing substantive and other pretrial motions and preparing for and proceeding through trial. The non-prevailing party could appeal, further delaying any relief to the class members. Having considered all of these factors, the Court recommends final approval of the settlement as fair, reasonable, and adequate.

## IV.     Attorneys' Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The law authorizes an award of fees and costs here. FDUTPA allows a prevailing party to receive reasonable attorneys' fees and costs from the non-prevailing party. Fla. Stat. § 501.2105(1). And with respect to the *Tomberlin* case, the California Consumers Legal Remedies Act requires a court to award costs and attorneys' fees to a prevailing plaintiff. Cal. Civ. Code § 1780(e).

"In a common fund settlement, attorneys' fees shall be based upon a reasonable percentage of the fund established for the benefit of the class." *In re Blue Cross Blue Shield Antitrust Litig.*

*MDL 2406*, 85 F.4th 1070, 1100 (11th Cir. 2023) (quotation marks omitted).  "The percentage applies to the total fund created, even where the actual payout following the claims process is lower."  *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999)).  "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  But courts typically award fees of 20 to 30% of the common fund, with 25% being a rough benchmark.  *In re Blue Cross Blue Shield*, 85 F.4th at 1100.  "If a fee award falls between 20 and 25 percent, it is presumptively reasonable."  *Id.*

A court should consider the *Johnson* factors to evaluate the percentage of a fee award in a common fund case.  *Camden I Condo. Ass'n*, 946 F.2d at 775 (referring to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).  Those factors are the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and the length of the professional relationship with the client; and awards in similar cases.  *Id.* at 772 n.3.

Class counsel ask for an award of $790,000 in fees and costs.  As there could have been approximately 15,000 claimants each claiming a $300 refund, the total funds claimed might have been around $4.5 million.  Class counsel's requested sum is less than 18% of that figure.

10

That percentage is reasonable in this case.  Class counsel explain in declarations that they practice at law firms with significant experience litigating class actions and multi-district litigation. DE 62-3 at 2–3; DE 62-4 at 3; DE 62-5 at 2.  Counsel undertook this case on a contingent-fee basis with no guarantee of recovery, and they had to forego other work in order to devote time to this litigation.  DE 62-3 at 3–4; DE 62-4 at 3–4; DE 62-5 at 3–4.  Their work on this case was extensive and included pre-suit investigation, drafting and reviewing pleadings, motion practice, discovery, extensive mediation and negotiations, finalizing the settlement, and moving for its approval. DE 62-3 at 3; DE 62-4 at 4; DE 62-5 at 3.  The issue of attorneys' fees was negotiated separately after the class members' recovery was finalized, and the payment to counsel does not reduce or compromise the relief for the class members.  DE 62-3 at 3–4; DE 62-4 at 4; DE 62-5 at 3–4.  The settlement meets or exceeds what class members could reasonably expect to recover by continuing to litigate, and settlement avoids the risks and resources required of continued litigation.  DE 62-3 at 3–4; DE 62-4 at 4; DE 62-5 at 3.

The Court notes that class counsel coordinated two parallel lawsuits that involved separate states' laws and were able to reach a global resolution.  Again, the settlement is an excellent result for the class members.  And according to counsel's declarations, their fees for the hundreds of hours of work they devoted to this case based on their regular hourly rates exceed $1.8 million, with their costs exceeding $50,000.  Having considered all of these factors, the Court recommends approval of an award of $790,000 for class counsel's fees and costs.

## V.      Class Representative Service Awards

Class representatives Gregory Matus and John Michael Tomberlin request approval of a service award of $10,000 each to compensate them for the significant time and effort they devoted

to the litigation.  DE 62 at 31.  The service awards would be paid out of the $790,000 award to class counsel.  *Id.*

The Eleventh Circuit has concluded that Supreme Court precedent prohibits incentive awards that compensate class representatives for their time and reward them for bringing a class action.  *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) ("[W]e hold that *Greenough* and *Pettus* prohibit the type of incentive award that the district court approved here—one that compensates a class representative for his time and rewards him for bringing a lawsuit." (referring to *Trustees v. Greenough*, 105 U.S. 527 (1881) and *Cent. R.R. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885))); *see In re Equifax Inc.*, 999 F.3d at 1281–82 ("In light of *NPAS Solutions*, Plaintiffs acknowledge that service awards are prohibited as a matter of law in this Circuit." (quotation marks omitted)).  However, *NPAS Solutions* was brought in federal court under federal question jurisdiction, as the class alleged violations of the Telephone Consumer Protection Act.  *NPAS Sols.*, 975 F.3d at 1249.

"In diversity cases, federal courts have held that the issue of whether a service award is appropriate is governed by state law."  *Roth v. GEICO Gen. Ins. Co.*, Nos. 16-62942-CIV, 18-61361-CIV, 2020 WL 10818393, at *3 (S.D. Fla. Oct. 8, 2020), *report & recommendation adopted* (S.D. Fla. Feb. 8, 2021); *see also Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023) (concluding that Florida state law governed whether a plaintiff in a class action brought under diversity jurisdiction could receive a service award), *report & recommendation adopted* (M.D. Fla. May 25, 2023).  "Florida law permits incentive award[s] in class actions."  *Roth*, 2020 WL 10818393, at *3 (citing *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. 3rd Dist. Ct. App. 2009) and recommending approval of a $10,000 service award to each named plaintiff).

The Court recommends approval of a service award of $10,000 to class representatives Gregory Matus and John Michael Tomberlin each.  That award is a standard sum for class representatives and is fair and reasonable.  The service awards do not reduce the class members' relief, as they are paid out of the award to class counsel.

### VI.      Recommendation

Accordingly, the Court recommends that Plaintiff's Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs [DE 62] be **GRANTED**.  The Court recommends that the class be certified for settlement purposes, that the settlement be approved, that an award of $790,000 for class counsel's fees and costs be approved, and that a service award of $10,000 for each class representative be approved.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 2nd day of March, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE